**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**NORTHERN DIVISION**

LEE HARTWELL,              )
        Plaintiff,       )
                )
      vs.            )   Case No.: 2:06-CV-518
THE CITY OF MONTGOMERY and THE )
PERSONNEL BOARD FOR THE CITY AND)
COUNTY OF MONTGOMERY, and KELLY )
GORDON               )
                )
_____)

## CERTIFICATE OF AUTHENTICITY

I hereby certify that the attached is a true and complete copy of the hearing file pertaining

to Lee M. Hartwell, DOB: 03/27/1964 kept in the offices of the Montgomery City/County

Personnel Department in my custody, that I am the custodian and keeper of said records.

I further certify that said records were made and kept in the ordinary course of business at

the time of the activity to which they refer or within a reasonable time thereafter and that it was

in the regular course of business for such records to be made at the time of the events,

transactions or occurrences to which they refer, or within a reasonable time thereafter.

Exhibits introduced in the hearing, which are also maintained in the hearing file, are

attached to the official transcript of the hearing

Signed this the _5ᵗʰ_ day of _January_____, 2007.

_____
CUSTODIAN OF RECORDS

SUBSCRIBED AND SWORN TO before me on this the _5_ day of _January_,
2007.

_____
NOTARY PUBLIC

1





EXHIBITS 6 AND 8

SEE PPS 45 AND 46
OF TRANSCRIPT

*13C*

PREPARED: 12/29/05        CITY OF MONTGOMERY MERIT INCREASE
PROGRAM: PA585L
                FROM: 01/27/06        TO: 02/09/06        PAYABLE DATE:  2/17/06

DEPARTMENT:  64 00  FIRE DEPARTMENT

| LAST NAME FIRST MI | SSN POSITION PAY FREQ GRADE SCH HOURS | PAY GRD STP | CURRENT HRLY-RT PAY PERIOD ANNUAL | MERIT DATE | PAY GRD STP | NEW HRLY-RT PAY PERIOD ANNUAL | MERIT DATE |
|---|---|---|---|---|---|---|---|
| HARTWELL LEE M | 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 8010 BW PSX B | 12 | 14.1150 ~~1,580.88~~ *1627.94* ~~41,102.88~~ *42,326* | 2/01/06 | 13 | 14.4740 ~~1,621.09~~ ~~42,148.29~~ *42,103* *1669.35* | 2/01/07 |

*Denied*

__ THIS EMPLOYEE IS RECOMMENDED FOR A MERIT INCREASE.

X MERIT INCREASE NOT RECOMMENDED AT THIS TIME.

COMMENTS: _____ DOCUMENTATION ATTACHED
_____

DATE: *1-26-06*        APPROVED:   DEPARTMENT HEAD        *M. Jordan*

      *Jan 26, 2006*              APPOINTING AUTHORITY   *Michael D Biddell*

      *1/27/06*                   PERSONNEL OFFICER       *Barbara Montgomery*

                PAGE    260

# Montgomery Fire Department
## Annual Merit Appraisal Form

Name: L.M. Hartwell          Rank: FireFighter

Station: 13          Unit: Engine 13          Date: 01/10/06

---

### Company Officer

| Name | Rank | Signature | Date |
|------|------|-----------|------|
| D.W. Wallace | Captain | D.W. Wallace | 1-08-06 |
| P.M. Dean | Lieutenant | P.M. Dean | 1-10-06 |
| E.L. Stephens | Lieutenant | E.L. Stephens | 01-09-06 |

Raise:  Recommended ☐
        Not Recommended ☒

Explanation:
This employee has received three Form 30s' during the past year.

---

### District Chief / Shift Commander

| Name | Rank | Signature | Date |
|------|------|-----------|------|
| M.F. Smith | District Fire Chief | M. Smith | 1-12-06 |
| J.L Petrey | District Fire Chief | | 01/13/06 |
| K.D. Gordon | District Fire Chief | K.D. Gordon | 1-14-06 |

Raise:  Recommended ☐
        Not Recommended ☒

Explanation:

---

### Assistant Chief

| Name | Signature | Date |
|------|-----------|------|
| C.E. Walker | C.E. Walker | 01/24/06 |

Raise:  Recommended ☐
        Not Recommended ☒

Explanation:

---

### Deputy Chief

| Name | Signature | Date |
|------|-----------|------|
| M. Jordan | M. Jordan | 1-25-06 |

Raise:  Recommended ☐
        Not Recommended ☒

Explanation:

---

Form 29
Revised 7/19/2005

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE:        L.M. Hartwell                          POSITION:   Sergeant

SUPERVISOR:      P.M. Dean, Lieutenant                  DEPT:   Fire

DATE OF COMMENDATION: June 16, 2005

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant Hartwell has performed very well this tri semester.. He is a seasoned professional and his years of experience shows in his daily activities. He is efficient around the station and on emergency scenes. He knows the skills required of him and does not hesitate to take action and help others as well.

_____          June 16, 2005
Supervisor                                    Date

My signature indicates that the above matters were discussed with me on          June 16, 2005
                                                                        (Month Day Year)
and that I received a copy of this form

_____
Employee Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: ___L.M. Hartwell___          POSITION: ___Firefighter___

SUPERVISOR: ___D.W. Wallace, Captain___          DEPT: ___Fire___

DATE OF COMMENDATION: ___January 10, 2006___

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

L.M. Hartwell was reassigned as a Firefighter on Engine-13 B-Shift on November 25, 2005. Firefighter Hartwell has done a good job as a Firefighter. He is very dependable. His performance around the station and on the fire ground is very good. I haven't had any problems with him. Firefighter Hartwell has a good attitude and works well with the other firefighters.

_____          ___01-10-2006___
Supervisor          Date

My signature indicates that the above matters were discussed with me on          ___January 10, 2006___

and that I received a copy of this form.          (Month Day Year)

_____
Employee Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: <u>L.M. Hartwell</u>  POSITION: <u>Sergeant</u>

SUPERVISOR: <u>D.W. Wallace, Captain</u>  DEPT: <u>Fire</u>

DATE OF COMMENDATION: <u>October 21, 2005</u>

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant Hartwell displays good skills, and a good knowledge of the rules and regulations and his territory.  He takes responsibility for his actions. Sergeant Hartwell is competent in his job and performs all assigned tasks to standard.

Sergeant L.M. Hartwell has received three form 30's, at the District level , one dated August 9, 2005, and two on August 18,2005.

* Form 30, dated August 9,2005, employee violated Section 1103g of the Montgomery Fire Dept. Rules and Regulation.
* Form 30, dated August 18, 2005, employee violated Article XI Section 1101 of the Rules and Regulation all members.
* Form 30, dated August 18,2005, employee violated Section 1101 of the Rules and Regulation.

See attached Form 30s'

<u>  Supervisor  </u>  <u>October 21, 2005</u>
              Date

My signature indicates that the above matters were discussed with me on <u>October 21, 2005</u>

and that I received a copy of this form.     (Month Day Year)

<u>  Employee Signature  </u>

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER FORM 639
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

**EMPLOYEE:** L.M. Hartwell                              POSITION: Sergeant

**SUPERVISOR:** K.D. Gordon, Sr.                        DEPT: Fire

**DATE OF COUNSELING:** August 18, 2005

**REASON FOR COUNSELING:** (Description of performance or conduct - give specific facts, background information, dates and times)

On August 16, 2005 Sergeant L.M. Hartwell sent a sealed hand mail envelope to A/C Walker without following the chain of command. Sgt. Hartwell violated Article XI Rules and Regulation all Members Section 1101, Members shall adhere to the Chain of Command.

### SEE ATTACHED LETTER

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

_____                              August 18, 2005
Supervisor                                                       Date

My signature indicates that the above matters were discussed with me on _____

and that I received a copy of this form.                         (Month Day Year)

_____
Employee Signature

This will certify that _L.M. Hartwell_ was offered a copy of this form but refused to sign the Employee Counseling Record.

_____
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER FORM 26
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

**EMPLOYEE:** L.M. Hartwell      POSITION: Sergeant

**SUPERVISOR:** K.D. Gordon, Sr.      DEPT: Fire

**DATE OF COUNSELING:** August 9, 2005

**REASON FOR COUNSELING:** (Description of performance or conduct  - give specific facts, background information, dates and times)

On August 4, 2005 Sergeant Hartwell demanded to go home from work because he was sick. After leaving it came into question if he was sick or not. On August 7, 2005 he stated he had gone to Pri-Med when he left work on August 4, 2005. I directed him to go and get an excuse and it would resolve the question of him being sick. He refused stating, " he had been advised not to, I was not on sick leave because it was not my regular shift so I do not have to bring one". Sergeant Hartwell willfully violated Section1103 g of the Rules and Regulation Stating: Neglect or refuse to perform any duty or refuse to obey any order of a superior officers pertaining to the department.     SEE ATTACHED LETTER.

**Employee's response:**

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

_____      August 09, 2005
Supervisor                          Date

My signature indicates that the above matters were discussed with me on _____

and that I received a copy of this form.           (Month  Day Year)

_____
Employee Signature

This will certify that _L.M. Hartwell_ was offered a copy of this form but refused to sign the Employee Counseling Record.

_____
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER FORM 30
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

EMPLOYEE: L.M. Hartwell                     POSITION: Sergeant

SUPERVISOR: K.D. Gordon, Sr.                DEPT: Fire

DATE OF COUNSELING: August 18, 2005

REASON FOR COUNSELING: (Description of performance or conduct  - give specific facts, background information, dates and times)

> On August 16 Sergeant Hartwell turned in a letter charging D/C Gordon with specific allegations of being bias towards him for over 3 years.  This is untrue and there is no evidence to support his allegations.  Sergeant Hartwell is being charge with violating Montgomery Fire Department Rules and Regulation Section 1101 Members shall refrain from making false statements.  Sergeant Hartwell has made statements against other officers and they have been found to be without merit
>
> See attached Letters

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

_____                    8-18-05
            Supervisor                                      Date

My signature indicates that the above matters were discussed with me on _____

and that I received a copy of this form.                    (Month  Day  Year)

_____
            Employee Signature

This will certify that        *L. M. Hartwell*        was offered a copy of this form
but refused to sign the Employee Counseling Record.

_____
            Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

**Form 10**

# CITY AND COUNTY OF MONTGOMERY
## PERSONNEL DEPARTMENT
## RECOMMENDATION FOR PERSONNEL ACTION

| | | | |
|---|---|---|---|
| **Department/Division** | MONTGOMERY FIRE DEPARTMENT | **Date** | 11/18/2005 |
| **Name of Employee** | HARTWELL LEE M | **Effective Date** | 11/18/2005 |
| **Social Security #**  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 | **Classification**  FIRE SGT | **Job Code** | 8011 |

Item 2 requires the signature of both department heads.

Items 2, 3, 4, 5, 6, 15 require approval of Personnel Director before action is official.  Items 3, 4, 5, 7 must have copy of letter to employee attached.  Item 8 should have copy of letter of resignation.

| | |
|---|---|
| 1.  Transfer within department ...................... (   ) | 9.   Retirement .................................................( ) |
| 2.  Transfer to another department ............... (   ) | 10.  Separation by death .................................( ) |
| 3.  Demotion .................................................. ( X ) | 11.  Expiration by Temporary Appointment.......................( ) |
| 4.  Layoff ...................................................... (   ) | 12.  Return Leave Without Pay..........................( ) |
| 5.  Dismissal ................................................. (   ) | 13.  Return from Military Leave..........................( ) |
| 6.  Leave without pay .................................... (   ) | 14.  Change of Name .......................................( ) |
| 7.  Suspension .............................................. (   ) | 15.  Change in Salary ......................................( ) |
| 8.  Resignation .............................................. (   ) | 16.  _____( ) |

| ITEMS AFFECTED BY ACTION | FROM | TO |
|---|---|---|
| **Department** (Items 1 & 2) | | |
| **Classification & Salary** (Items 1, 2, 3) | 8011/10/$42,631/1639.66/14.2167 | 8010/12/$42,326/1627.94/14.1150 |
| **Dates** (Items 6 & 7) | | |
| **Name** (Item 14) | | |
| **Amount** (Item 15) | | |
| **Other** (Item 16) | | |

**Funds are available**  _E. Floyd Faush_                                **Date** NOV 2 1 2005
                         Disbursing Officer

---

**Explanation and remarks (Give reason for any action which is not self-explanatory)**

EMPLOYEE DEMOTED FROM RANK OF SGT. TO FIREFIGHTER. EFF DATE 11/18/05.  TO REFLECT ON PAYROLL DATED 12/09/05.

| | | |
|---|---|---|
| (Signed) 1. _Bobby N. Knight_         Appointing Authority | **Date** NOV 2 1 2005 |
| 2. _(signature)_ | **Date** 11/8/05 |
| 3. _____ | **Date** |
| 4. _Barbara M. Montes_         Personnel Director | **Date** NOV 2 3 2005 |

PER 300-419
revised 4/10/02

FORM 100                    **CITY PAYROLL DEPARTMENT**                SUBMIT IN TRIPLICATE

**Section A    To be completed for items 1, 2, 3, 15 & 16 on Form 10 and Promotion on Form 5**

Dept./Div. Number ___6400___        Employee's Name _____LEE M HARTWELL_____
                                                    FIRST          M.I.                    LAST

Effective Date ___11/18/2005___      Social Security Number: _____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_____
                  MO.    DA.    YR.

                          CURRENT CLASSIFICATION & SALARY    ___8011___    ___PSZ___    ___10___
                                                             JOB CODE       PAY RANGE       STEP

NEW CLASSIFICATION & SALARY INFORMATION                    NEW PAYROLL/DEPT# _____

                                                                        IF APPLICABLE
                                                                        REVIEW DATE FOR
NEW JOB CODE ___8010___   NEW PAY RANGE ___PSX___   NEW STEP ___1 2___   NEXT INCREASE   ___N/C___
                                                                                        (MO/DA/YR)

ITEM 15 NEW HOURLY RATE: _____$14.1150_____   WKLY / BW ___1,627.94___   SCH. HOURS ___112.0___

IF ACTION INVOLVES A PAY OUT ON PAYROLL, WAS EMPLOYEE ADVANCED WORK TIME ON BI-WKLY 4/15/83
WEEKLY PAYROLL 4/8/83 OR BI-WEEKLY/WEEKLY 1985?
                                                            YES/NO

IF YES:  HOW MANY HOURS WERE ADVANCED:          (1983) _____ HOURS
                                                (1985) _____ HOURS
                                                TOTAL  ___0.0___   HOURS

AFTER TIME USED ON FINAL TIME SHEET, PAY REMAINING LEAVE BALANCES AS FOLLOWS:
ANNUAL LEAVE HOURS:          _____
SICK LEAVE HOURS:            _____  (1/2 Accrued)
COMPENSATORY HOURS:          _____
PERSONAL LEAVE HOURS:        _____      LAST DAY IN PAY STATUS: _____
TOTAL LEAVE HOURS:           ___0.0___

**Section B    To be completed with Forms 3,5,8,9 & 40 or Re-employment on Form 10**
DEPARTMENT/DIVISION NUMBER: _____    VERIFIED SOCIAL SECURITY NUMBER _____

THE FOLLOWING PERSON HAS BEEN APPOINTED:   TEMPORARY: _____   PERMANENT: _____

NAME: _____                                    EFFECTIVE DATE: _____
        FIRST:        MI        LAST                                 (MO/DA/YR)

STREET ADDRESS _____   CITY ___   STATE ___   ZIP ___        PHONE NUMBER ___

RACE ___        SEX ___      MARITAL ___          NO. OF ___       BIRTHDAY ___
                             STATUS             DEPENDENTS

HOURLY RATE ___   JOB CODE ___   PAY RANGE ___        STEP ___     REVIEW DATE ___

PAID:              WILL ACCRUE LEAVE:          WILL PAY RETIREMENT:
   WEEKLY ___        YES ___                     YES ___
   BI-WEEKLY ___     NO ___                      NO ___

SCHEDULED HOURS PER PAY PERIOD: _____   NON-SCHEDULED, PAID HOURS WORKED ONLY: ___

WAS EMPLOYEE PREVIOUSLY EMPLOYED BY THE CITY OF MONTGOMERY? _____   PAID WKLY OR BW ___
                                                            YES/NO
                                                                      PREVIOUS SERVICE

IF YES: ___   DEPT # _____   TERM. DATE _____
                                                          MONTHS  DAYS  YEARS

REMARKS:
┌─────────────────────────────────────────────────────────────────┐
│                                                                   │
│                                                                   │
│                                                                   │
│ EMPLOYEE DEMOTED FROM RANK OF SGT. TO FIRE FIGHTER.  EFFECTIVE DATE 11/18/05. │
└─────────────────────────────────────────────────────────────────┘

                                                REVISED 5-03-02 PYR/RW

# MEMORANDUM

**TO:**        **Chief J. W. McKee**
                **Fire Department**

**FROM:**      **Michael S. Briddell**
                **Executive Assistant to the Mayor**

**DATE:**      **November 16, 2005**

**RE:**         **RECOMMENDATION OF DEMOTION**

It is the Mayor's decision to demote Sergeant L. M. Hartwell from the rank of Sergeant to the rank of Firefighter as recommended in your memo dated October 5, 2005. Please prepare the necessary personnel forms and forward them to this office for approval.

Further insure that all the City personnel rules are followed.

**APPROVED:**

**Bobby N. Bright**
**Mayor**

**MSB/wsf**

RECEIVED NOV 1 7 2005

PER FORM 36
Revised 12/04

# NOTIFICATION OF ~~DISMISSAL~~ / DEMOTION

Certified Mail
Return Receipt Requested

Date: ___November 16, 2005___

_____Sergeant L. M. Hartwell_____
(Employee's Name)

_____BY HAND DELIVERY_____
(Street Address)

_____
(City, State, Zip)

This is to notify you that as of this date, you are herewith ~~dismissed~~/demoted from employment as a(n)

_____Sergeant to a Firefighter_____  by the  _____Fire_____
(Job Title)                                        (Department)

of    ____City of Montgomery_____
(City of Montgomery, Montgomery County, Montgomery Housing Authority, Montgomery Regional Airport Authority)

The reason(s) for this dismissal/demotion is (are) (list all charges - attach additional sheets as required):

> Violation of Fire Department Rules and Regulations governing failing to carry out an order from a superior, breaking the chain of command, being disrespectful to a superior, and making untrue slanderous comments about a superior.

Previous record considered (list all previous actions considered - attach additional sheets as required):

> 

You are entitled to a hearing before the Personnel Board on the above charges.

You may answer these charges within three (3) days from the date of receipt of the notification of dismissal/demotion, by responding in writing to your department head and providing a copy to the personnel Director, who is located at 27 Madison Avenue. Within ten (10) days from the time for filing your answer, you must file a written request with the Personnel Director if you desire a hearing before the Personnel Board. You may be represented by legal counsel at this hearing if you desire and you shall have the right to answer these charges and to present any statements, witnesses, evidence in your behalf and to cross-examine any other witnesses presented. Consult the Montgomery City-County Personnel Department, 27 Madison Avenue, relative to any other rights you have under the Merit System Law.

I hereby certify that this document was given to the employee or placed in the I United States mail on

_____
Month        Day            Year                    Appointing Authority
                                                     Mayor
_____                                Title
Employee

PER FORM 36
Revised 12/04

## NOTIFICATION OF ~~DISMISSAL~~ / <u>DEMOTION</u>

Certified Mail
Return Receipt Requested

Date: ___November 16, 2005___

Sergeant L. M. Hartwell
_____
(Employee's Name)

BY HAND DELIVERY
_____
(Street Address)

_____
(City, State, Zip)

This is to notify you that as of this date, you are herewith ~~dismissed~~/<u>demoted</u> from employment as a(n)

___Sergeant to a Firefighter___     by the     ___Fire___
(Job Title)                                      (Department)

of     ___City of Montgomery_____
(City of Montgomery, Montgomery County, Montgomery Housing Authority, Montgomery Regional Airport Authority)

The reason(s) for this dismissal/demotion is (are) (list all charges - attach additional sheets as required):

Violation of Fire Department Rules and Regulations governing failing to carry out an order from a superior, breaking the chain of command, being disrespectful to a superior, and making untrue slanderous comments about a superior.

Previous record considered (list all previous actions considered - attach additional sheets as required):

You are entitled to a hearing before the Personnel Board on the above charges.

You may answer these charges within three (3) days from the date of receipt of the notification of dismissal/demotion, by responding in writing to your department head and providing a copy to the personnel Director, who is located at 27 Madison Avenue. Within ten (10) days from the time for filing your answer, you must file a written request with the Personnel Director if you desire a hearing before the Personnel Board. You may be represented by legal counsel at this hearing if you desire and you shall have the right to answer these charges and to present any statements, witnesses, evidence in your behalf and to cross-examine any other witnesses presented. Consult the Montgomery City-County Personnel Department, 27 Madison Avenue, relative to any other rights you have under the Merit System Law.

I hereby certify that this document was given to the employee or placed in the I United States mail on

_____
Appointing Authority

_____  _____  _____
Month          Day            Year

Mayor
Title

_____
Employee

PER FORM 34
Revised 10/04

## APPOINTING AUTHORITY'S RECORD OF DISCIPLINARY HEARING

Employee: _____ Sergeant L. M. Hartwell _____

Department: _____ Fire Department _____

Department Head: _____ J. W. McKee _____

Date: _____ October 27, 2005 _____     Time: _____ 2:30 p.m. _____

Employee Represented by: _____ Bernard Brannan _____

Employee's Witnesses:

Employee's Explanations or Defenses *(attach additional sheets as required):*

SEE ATTACHED

Action:

It is the Mayor's decision to demote Sergeant L. M. Hartwell from the rank of Sergeant to Firefighter.

Heard before me _____ October 27, 2005 _____

                       month            day         year

_____
Appointing Authority

The hearing was convened at 2:30 p.m. Sergeant L. M. Hartwell was present. Also present were Assistant Chief C. E. Walker; Mr. Bernard Brannan, Attorney for Sergeant Hartwell; Mr. Wallace Mills and Mr. Michael Boyle, City Legal Department; Mr. Michael S. Briddell, Mayor's office and presiding officer, and Mrs. Wanda Fox, recording secretary. Mr. Briddell stated this hearing was being held to give Sergeant Hartwell an opportunity to defend himself of the charges. He informed Sergeant Hartwell that if he was suspended in excess of thirty (30) days or more, demoted or terminated from employment, he had the right to appeal to the City-County Personnel Department within ten (10) days of the notification. Sergeant Hartwell stated since he was off and had volunteered to work, he did not feel it necessary to be on sick leave or bring a doctor's excuse. Also, he stated the reasons for not bringing a doctor's excuse was because it was a private matter. He also stated as to the charge of breaking the chain of command, he had always sent information to the Chief through the proper channels. Sergeant Hartwell stated the tattoo on the arm of District Chief Gordon to be very offensive and was a racial statement.

RECEIVED NOV 1 7 2005

PER FORM 33
Revised 02/05

## NOTICE OF APPOINTING AUTHORITY DISCIPLINARY HEARING

Employee's Name _____ Sergeant L. M. Hartwell _____

Street Address _____ BY HAND DELIVERY _____

City/State/Zip _____

Please be advised that a hearing has been scheduled for:      October 27, 2005 at 2:30 p.m.

Month; Day, Year, Time (to include a.m. or p.m.)

Mayor's Conference Room _____        Mr. Michael Briddell, Exec. Asst. to the Mayor

Location of disciplinary hearing                To appear before

for the purpose of considering the attached:

[ ]      disciplinary action against you for the following reason, or;

[X]      recommendation for disciplinary action

You are entitled to be at the hearing and if you desire, you may be represented by an attorney, to be paid for by you. You may present witnesses or evidence concerning the charges being made against you. You will need to furnish the Appointing Authority the name of the attorney, if any, who will represent you. Also, furnish a list of witnesses and all evidence you intend to bring at least 72 hours prior to said hearing and you will be furnished the same. This hearing and action taken as a result of same, shall not affect your rights, if any, which you may have for appeal or review under any laws or regulations of the Montgomery City/County Personnel Board, the State of Alabama or the United States of America.

_Michael Briddell_ _____
Appointing Authority

I hereby certify, that this document with attachment was given to the employee or placed in the United States mail on

_____
month      day      year

Signed: _____

Witness: _____

I herewith acknowledge receipt of this notification of said charges and of the hearing thereon.

Employee: _____

Attach PER FORM 32/Disciplinary Action

SERGEANT L. M. HARTWELL:

In violation of the rules and regulations governing the Montgomery Fire Department:

ARTICLE XI - Rules and Regulations All Members:

Sec. 1100 - The rules of conduct prescribed in this article shall be confined to the official capacity of members of the Montgomery Fire Department:

a - When the actions or in-actions whether on duty or off duty may adversely affect the efficiency, discipline, reputation, or morale of the department.

b - When in uniform whether on or off duty.

c - When on property occupied or used by the Department.

Sec. 1101 - Members shall:

a - Adhere to the Chain of Command.

m - Be just, impartial, firm and dignified in their relations with others.

p - Refrain from immoral conduct, deception, violation or evasion of law or official rule, regulation or order.

q - Refrain from false statements.

t - Understand, be familiar with and obey the rules, regulations and training and shall conduct themselves in a manner that will not reflect criticism on the department.

Sec. 1102 - Members shall:

h - Perform such extra details and duties as may be required beyond their regular yours of service to cope with any emergencies that may arise, i.e., large fires, manpower shortages, etc.

i. - Accord obedience and proper respect to Officers and acting officers.

Sec. 1103 - Members shall not:

g. Neglect or refuse to perform any duty or refuse to obey any order of a superior Officer pertaining to the department

Prior record also considered.

MEMORANDUM


TO:      Mayor Bobby Bright

THRU:    Mr. Michael Briddell
         Executive Assistant to the Mayor

FROM:    Fire Chief J. W. McKee

DATE:    October 5, 2005

RE:      Disciplinary Action Against
         Sergeant L. M. Hartwell


On September 29, 2005, a Montgomery Fire Department disciplinary board convened and heard the action that had been brought against Sergeant L. M. Hartwell.  Sergeant Hartwell was charged with failing to carry out an order from a superior, breaking the chain of command, being disrespectful to a superior, and making untrue slanderous comments about a superior.  (Please see attached disciplinary packet.)

The disciplinary review board recommended that Sergeant Hartwell be reduced in rank from Sergeant to Firefighter, and take the subsequent reduction in pay.

Sergeant Hartwell has been in the employ of the Montgomery Fire Department for over 19 years.  He is will aware of what is expected of his performance.  As a first line supervisor, he should be keenly aware of the importance of respect to a superior officer and the prompt and energetic carrying out of orders.  Sergeant Hartwell has

been transferred to different stations three different times due to his inability to get along with other personnel or due to conflict with his superiors.

I feel we have been patient with Sergeant Hartwell and by giving him several chances to make a new start and become a productive employee, we have been more than fair. It has become apparent that Sergeant Hartwell cannot supervise his own actions; hence, it is unrealistic to believe that he can adequately supervise a fire company. I concur with the review board, that Sergeant Hartwell be reduced in rank from Sergeant to Firefighter.

JWM:fb

Attachments

J.O.K
10-13-05

TO:          D. W. Wallace, Captain

FROM:        L. M. Hartwell, Sergeant

DATE:        October 11, 2005

RE:          Incident on Sick Leave

Sir:

I respectfully request a copy of all the letters that were written by the Fire Department
personnel at Station 13 and Station 3 regarding my Sick Leave Incident.  Your
attention to this matter is greatly appreciated.

Respectfully,

L. M. Hartwell, Sergeant
Station Thirteen, District II

**U.S. Postal Service.**
**CERTIFIED MAIL... RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7005 0390 0000 5266 9518

Sent To  *L. M. Hentawell*
Street, Apt. No.; or PO Box No.  *413 Spring Valley Rd.*
City, State, ZIP+4  *Montgomery 36116*

PS Form 3800, June 2002                    See Reverse for Instructions

PER FORM 31 (MFD)
Revised 12/3/02

# MONTGOMERY FIRE DEPARTMENT
# NOTICE OF DISCIPLINARY REVIEW BOARD HEARING

Sergeant L. M. Hartwell
NAME

413 Spring Valley Road
STREET ADDRESS

Montgomery, Alabama  36116
CITY, STATE AND, ZIP

Please be advised that a Review Board Hearing is available to you if you so choose.

Thursday, September 29, 2005--09:00 a.m.          City Clerk's Conference Room--City Hall
MONTH, DAY, YEAR, TIME (to include a.m. or          DISCIPLINARY REVIEW BOARD LOCATION

The purpose of a Review Board Hearing is to consider disciplinary action against you for the following reasons (see attachment)

You may **not** be represented by an attorney at the departmental level. Disciplinary actions require a hearing **before** the appointing authority or his designee, and you will be advised in writing of such hearing if required at the conclusion of your review hearing.  You may have witnesses to testify on your behalf.

_M. Jordan_
Departmental Head

I hereby certify that this document was given to the employee on

_9_      _20_      _05_
(MONTH      DAY      YEAR

Signed:  _M. Jordan_

Witness:  _____

I hereby acknowledge receipt of this notification of said charges and of the hearing thereon

_____
Employee

SERGEANT L. M. HARTWELL:

In violation of the rules and regulations governing the Montgomery Fire Department:

ARTICLE XI – Rules and Regulations All Members:

Sec. 1100 – The rules of conduct prescribed in this article shall be confined to the official capacity of members of the Montgomery Fire Department:

a – When the actions or in-actions whether on duty or off duty may adversely affect the efficiency, discipline, reputation, or morale of the department.

b – When in uniform whether on or off duty.

c – When on property occupied or used by the Department.

Sec. 1101 – Members shall:

a – Adhere to the Chain of Command.

m – Be just, impartial, firm and dignified in their relations with others.

p – Refrain from immoral conduct, deception, violation or evasion of law or official rule, regulation or order.

q – Refrain from false statements.

t – Understand, be familiar with and obey the rules, regulations and training and shall conduct themselves in a manner that will not reflect criticism on the department.

Sec. 1102 – Members shall:

h – Perform such extra details and duties as may be required beyond their regular yours of service to cope with any emergencies that may arise, i.e., large fires, manpower shortages, etc.

i. – Accord obedience and proper respect to Officers and acting officers.

Sec. 1103 - Members shall not:

g. Neglect or refuse to perform any duty or refuse to obey any order of a superior Officer pertaining to the department

Prior record also considered.

TO:    D. W. Wallace, Captain

FROM:  L. M. Hartwell, Sergeant

DATE:  September 29, 2005

RE:    Disciplinary Hearing Recommendation Appeal

Sir:

I respectfully request a meeting with the Mayor's Office to appeal the decision made by the Fire Department Review Board concerning my rank.  Your attention to this matter is greatly appreciated.

Respectfully,

L. M. Hartwell, Sergeant
Station Thirteen, District II

9/30/05

To:        J.W. McKee, Fire Chief

From:    Disciplinary Review Board
           W. D. Davis, Assistant Chief, Chairman _W.D.D._
           D.S. Yelder, Assistant Chief _D.S.Y_
           K. Bolling, District Chief _KB_

Date:    September 29, 2005

Re:       Disciplinary Hearing
           L.M. Hartwell, Sergeant

The Montgomery Fire Department Disciplinary Review Board met this date and heard the oral testimony and reviewed the written testimony in regards to formal charges brought against Sergeant L.M. Hartwell. Assistant Chief C. E. Walker filed formal charges against Sergeant Hartwell for several Montgomery Fire Department Rule violations.

After hearing the testimony from Sergeant Hartwell, District Chief, K.D. Gordon and Assistant Chief Walker, the Board reviewed the facts regarding the incident and finds that the charges against Sergeant Hartwell are Sustained and the Board unanimously endorsed Assistant Chief Walker's recommendation that Sergeant Hartwell be demoted to the rank of Firefighter.

# MONTGOMERY FIRE DEPARTMENT
### REVIEW BOARD HEARING

After having been served with a statement of charges, I acknowledge that I have a right to a **Montgomery Fire Department Review Board Hearing**. I do further acknowledge that if I do / do not accept the recommended disciplinary action, I must respond to this request within three (3) calendar days.

1)    I accept the recommendation of _____ that I be:

☐    Suspended for _____

☐    Demoted
      from _____ to _____
              Position Title                    Position Title

☐    Dismissed

2)    I _Lee M. Hartwell_ am hereby requesting an appearance before the **MONTGOMERY**
           Employee Name                    **FIRE DEPARTMENT REVIEW BOARD**


_____        9-6-05
Signature of Employee                          Date

_____        9/6/05
Signature of Witness                            Date


Form 27
5/4/2005

M.
00744   9-6-05

TO:        M. Jordan, Deputy Fire Chief

FROM:      C. E. Walker, Assistant Fire Chief     [signature]

DATE:      August 22, 2005

RE:        Recommendation for Disciplinary Action
           Sergeant L. M. Hartwell

Sir:

Sergeant L. M. Hartwell is being charged with rule violations of the Montgomery Fire Department. I am forwarding this letter of Recommendation for disciplinary actions to you for your consideration. The recommendation for disciplinary action is based upon a chain of events involving Sgt. Hartwell; the first being a claim of being sick, secondly refusing to bring a return to duty doctor's certificate, thirdly, violating the Chain of Command through written communications, fourth, making false statements claiming bias and mistreatment by District Chief K. Gordon and finally the claim of the deliberate display of the confederate flag tattooed on District Chief Gordon's right arm.

On the afternoon of August 4, 2005, while working overtime, Sgt. Lee Hartwell of Engine Company 13 reported to the Acting District Supervisor, Captain S. D.Burkett, that he was sick and needed to go home. He was allowed to leave work on the statements that he was sick. On the morning of August 7, D/C Kelly Gordon, following up on statements made at the drill field on Thursday, August 4, by Sgt. Hartwell, stating that if he had to go spend the remainder of the shift at Station 3 riding on Truck 45 that he would go home on sick leave (See written statements by Truck 45 and Engine 13 personnel), D/C Gordon asked Sgt. Hartwell that upon returning to duty on his next shift, August 10, he bring a doctor's return to work certificate. Sgt. Hartwell had already told D/C Gordon that he went to the doctor for his illness when he left work on Thursday August 4th. Sgt. Hartwell's reply was: "No, I have been advised not to bring an excuse because I was not on sick leave, it was not my regular work day." D/C Gordon gave him the directive a second time and Sgt. Hartwell again replied: "No, I was advised not to." (See Capt. Wallace's letter). D/C Gordon wrote an employee counseling record on Sgt. Hartwell for refusing his directive on the doctor's excuse.

On August 7th, 2005, Sgt. Hartwell wrote me a letter stating the events that occurred on August 4th, 2005 while working overtime. On August 16th, 2005, Sgt. Hartwell was given an Employee Counseling Record for violating the department Chain of Command policy. I have given Sgt. Hartwell clear instructions on using the proper Chain of Command when addressing any issue involving Fire Department business. Montgomery Fire Department rule book sec.963 outlines the Proper Interdepartmental Communication procedure. (See sec.963 in rule book and memo's dated August 17th, 2004, September 20th, 2004 and September 28th, 2004). Sgt. Hartwell has continued to violate the Chain of Command on written documentation.

On September 25th, 2004, Sgt. Hartwell was given a written Employee Appraisal Review Record document for Chain of Command violations by D/C John Petrey. (See Form 30b dated August 11th, 2004). Sgt. Hartwell has no regard for the Chain of Command and he has been given verbal warnings on several occasions other than the letter documents. D/C M. K. Holland has also given directives to Sgt. Hartwell about his written documents that violate Chain of Command written to me and once again he has refused to follow those directives. (See letters dated August 14, 2004). All of these letters addressed to me and without regard or consideration of his company Officer or District Chief.

On August 10th, 2005, Sgt. Hartwell wrote a letter of documentation to his company Captain, D. W. Wallace, that D/C Gordon was "being biased against him." Sgt. Hartwell referred to three (3) separate incidents in an attempt to justify the allegations. (See Sgt. Hartwell's letter dated 08/10/05).

D/C Gordon has categorically denied the claims of this letter. The tactics of documenting false and erroneous information and frivolous allegations are common with Sgt. Hartwell as I have statements to his abusive allegations. (See letter from D/C J. Petrey to me dated August 26th, 2004). Please note in this letter the conning and conniving attitude in which Sgt. Hartwell displays against one of his former Captains at station sixteen(John Dennis); Sgt. Hartwell states: "that is when I bluffed him and played the race card. I asked Captain Dennis if he was a racist even though I knew he was not." This blatant disrespect for his Captain came as a result of Captain Dennis denying Sgt. Hartwell the privilege of sleeping on the far side of the station at night away from the other members of the company. In the same time period Sgt. Hartwell refused to follow directives from Lt. Gamble involving the parking of his vehicle in a space that the company Captain had disallowed.

On August 17th, 2005, Sgt. Hartwell wrote a letter to his Captain, D. W. Wallace, claiming that D/C Gordon proudly displays a tattoo of the Confederate flag on his arm. (See letter dated August 17th, 2005 from Sgt. Hartwell). D/C Gordon has not displayed nor is he in violation of the Montgomery Fire Department Tattoo policy. (See Master Letter File # 8-4 titled : Tattoo/Brand and Body Piercing Policy dated September 3, 1999)

Proceeding further, in an attempt to summarize all of the violations of Sgt. Hartwell, it is clear to me that he is in defiance of any authority of any Fire Department Officer and will document unfounded claims of mistreatment, bias, false statements and has a complete lack of respect for company Officers and District Supervisors. Also, there is a blatant disregard for me as an Assistant Fire Chief with regards to his continued written communications to me. The rule that governs all is twisted by Sgt. Hartwell in an attempt to get things his way. His lack of respect for ranking Officers and the refusal to follow directives from me or those Officers will not be tolerated any longer. I am charging Sgt. L. M. Hartwell with the following rules violations:

Rule Violations: Sec. 1100, Explanation: The rules of conduct prescribed in this article shall be confined to the official capacity of members of the Montgomery Fire Department.

    a.  When the actions or in-actions whether on duty or off duty may adversely affect the efficiency, discipline, reputation, or morale of the department.

    b.  When in uniform whether on or off duty.

    c.  When on property occupied or used by the Department.

Sec. 1101, Members shall:

    a.  Adhere to the Chain of Command.

    m.  Be just , impartial, firm and dignified in their relations with others.

    p.  Refrain from immoral conduct, deception, violation or evasion of law or official rule, regulation or order.

    q.  Refrain from false statements.

    t.  Understand, be familiar with and obey the rules, regulations and training manuals and shall conduct themselves in a manner that will not reflect criticism on the department.

Sec. 1102, Members shall:

    h.  Perform such extra details and duties as may be required beyond their regular hours of service to cope with any emergencies that may arise, i.e., large fires, manpower shortages, etc.

    i.  Accord obedience and proper respect to Officers and acting Officers

Sec. 1103, Members shall not:

    g.  Neglect or refuse to perform any duty or refuse to obey any order of a superior Officer pertaining to the department.

The Montgomery Fire Department has always been considered a paramilitary fire service organization. The department's aim of saving lives, fire prevention and extinguishment and conservation of property is dependent upon rigorous training, dedication to duty and a very stringent disciplined Chain of Command. It is imperative that in order to properly perform the duties and responsibilities that are required of this department an orderly Chain of Command must be in place at all times. Emergency situations involving the necessary actions to be taken to save lives or mitigate hazardous incidents almost always depends on the ability and quality of the orders given and the assurance that those orders are carried out. Sergeant Hartwell in the absence of his company Officer i.e., when he (the Officer) is on vacation, sick leave, or detailed to another company for a period of time will find himself (Hartwell) assuming the role of a company Officer giving orders and making sure they are being carried out.

When Sergeant Hartwell refuses to carry out orders given by his company Officers and District Chiefs, I am convinced that as a working supervisor he will be ineffective in

giving orders in that role jeopardizing the lives of firefighters and citizens of Montgomery when engaged in emergency situations.

After reviewing all the documents and going through extensive interviews with D/C Gordon and others, I am recommending that Sergeant Lee Marvin Hartwell be demoted from Sergeant/Engineer to Firefighter.

Your attention to this recommendation is greatly appreciated. If I can assist you further in this matter, please let me know.

PER.FORM 30
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

**EMPLOYEE:** L.M. Hartwell          **POSITION:** Sergeant

**SUPERVISOR:** K.D. Gordon, Sr.          **DEPT:** Fire

DATE OF COUNSELING: August 18, 2005

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information, dates and times)

On August 16, 2005 Sergeant L.M. Hartwell sent a sealed hand mail envelope to A/C Walker without following the chain of command. Sgt. Hartwell violated Article XI Rules and Regulation all Members Section 1101, Members shall adhere to the Chain of Command.

SEE ATTACHED LETTER

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

_Kelly D. Gordon_          August 18, 2005
Supervisor          Date

My signature indicates that the above matters were discussed with me on _____
(Month Day Year)
and that I received a copy of this form.

_____
Employee Signature

This will certify that _L.M Hartwell_ was offered a copy of this form
but refused to sign the Employee Counseling Record.

_____
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

TO:     C.E. Walker, Assistant Fire Chief

FROM: K.D. Gordon, District Fire Chief 7 / 0 G

DATE:  August 16, 2005

RE:     Sergeant L.M. Hartwell (Chain of Command)

Sir:

On August 16, 2005 at approximately 0730 Captain D.W. Wallace entered my office and gave me a letter from Sergeant L.M. Hartwell. I acknowledged receipt of the letter. Then he gave me a sealed hand mail envelope and said, Sergeant Hartwell said it was to go to Chief Walker. I asked if he knew what was in it. He was not sure. I asked if he had initialed anything to go downtown. He said, "No". I told Captain Wallace you know nothing leaves your company without your initials and it does not leave the district without mine or one of the other District Chiefs. I directed him to go to Sergeant Hartwell and tell him we would not be able to take it downtown without our initials. Sergeant Hartwell told Captain Wallace that we did not have the authority to open the hand mail. Captain Wallace opened it and we initialed it and it was turned in downtown.

On August 11, 2004 Sergeant Hartwell was counseled with by District Chief J.L. Petrey on the proper procedures for turning paperwork in for someone downtown. He was instructed on the correct procedure for following the Chain of Command. A Form 30B was completed and placed in his file. (See attached Form 30B)

On August 17, 2004 Assistant Fire Chief Walker placed a memo in Sergeant Hartwell's file stating his claims were without merit and should not have been directed to him. By doing so he broke the Chain of Command. Sergeant Hartwell was told if he violated this rule again a written reprimand will follow. (See attached Memo to File)

On September 20, 2004 Assistant Fire Chief Walker received another sealed envelope from Sergeant Hartwell. Again Sergeant Hartwell had circumnavigated his company and district officers by placing the letter in a sealed envelope and addressing it to Assistant Fire Chief Walker. (See attached Memo to File Dated September 20, 2005)

Sergeant L.M. Hartwell Violated Article XI Rules and Regulation all Members Section 1101, Members shall adhere to the Chain of Command. This is his third documented offense of this exact nature. Sergeant Hartwell has a total disregard for his superior officers. When he is in violation of a rule or is made to perform his duties he writes a letter to Chief Walker trying to bring charges on the officers enforcing the rules. This behavior should not be tolerated without some form of reprimand.

Respectfully,

K.D. Gordon, District Fire Chief
Station 13, District II

# MEMORANDUM

TO:      File

FROM:    Assistant Chief C.E.Walker

DATE:    September 20, 2004

RE:      Sergeant L.M.Hartwell

Monday, September 20, 2004, I received a letter sealed in a hand-mail envelope. I was informed by District Chief John Petrey that the letter was from Sergeant L.M.Hartwell from Engine Company Sixteen. (See attached letter).

Again, Sergeant Hartwell has broken the chain of command by way of written communication directly to me and in the process circumventing his Company Office (Lt.R.L.Johnson), and his District Chief (John Petrey). Sergeant Hartwell continues to deliberately bypass necessary chain of command without regard for the respect of his Company Officer and District Chief. On August 14, 2004 Sergeant Hartwell did this very same thing and now it appears that he has the same defiant attitude in this inappropriate behavior yet once more.

If this blatant behavior of disrespect continues it leaves me no other choice than to bring charges against Sergeant Hartwell for failure to obey Company Officer and District Chiefs' orders pertaining to the circumventing of the chain of command.

Montgomery Fire Department
Employee Appraisal Review Record

EMPLOYEE: L.M. Hartwell                    POSITION: Fire Sergeant

SUPERVISOR: J.L. Petrey, District Chief        DEPARTMENT: Fire

DATE OF COUNSELING: September 25, 2004

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background, dates and times)

On August 11, 2004 Sergeant Hartwell informed me that he had written documentation of a series of incidents that had occurred at Station Sixteen that he would like to turn in. At this time I advised Sergeant Hartwell that anything he would like to submit would have to go through his chain of command. According to Montgomery Fire Department Rules and Regulations Article XI, Section 1101, Members shall: a. Adhere to the chain of command.

_____                September 25, 2004
Supervisor Signature                          Date

My signature indicates that the above matters were discussed with me on      9  27  04
and I have received a copy of this form.                                  Month / Day / Year

_____
Employee Signature

Sgt. Hartwell refused
to sign form.

Attach Additional Sheets as Required

Form 30B
11/14/2002

## INTERDEPARTMENTAL COMMUNICATIONS

Sec. 963, <u>Proper Interdepartmental Communication:</u>

TO:     James O. Smith, District Chief

FROM:   William A. Ross, Firefighter

DATE:   January 1, 1992

RE:     Proper Interdepartmental Communication
        form letter

Sir:

All interdepartmental communications are to be one copy, typed using single spacing and on one side only.

Write about one subject per letter. Be brief and to the point. Use no abbreviations. Use block style form (no paragraph indentions, complimentary close at left hand margin).

The complimentary close should be "Respectfully". Sign your name using first name, middle initial, and last name. You should also include your rank, station and division to which you are assigned.

Forward promptly via chain of command (from your Officer to your District Chief, etc.) address to the person and station number.

Respectfully,


William A. Ross, Firefighter
Station 20, District III

TO:      C. E. Walker, Assistant Chief

FROM:   L. M. Hartwell, Sergeant

DATE:   September 20, 2004

RE:      Status on Lt. E. F. Gamble & Lt. C. Brown Incident.

Sir;

On August 14, 2004, I submitted some letters regarding Lt. E. F. Gamble usage of a cellular phone, beeper & Lt. C. Brown unprofessional behavior. It has been a month since I submitted the letters to administration. I would like to know what disciplinary action being taking against these officers if any at all. I would greatly appreciate if you inform me in write on the status of the above incident.


Respectfully,

*L. M. Hartwell Sgt.*

L. M. Hartwell, Sergeant
District II, Station 16

TO:    C. E. Walker, Assistant Chief

FROM: L. M. Hartwell, Sergeant

DATE: August 14, 2004

RE:    Incident with Lt. C. Brown

On August 6, 2004 at around 2330 Lt. C. Brown came out of his room and got a coke and some peanuts. Lt. C. Brown came to the lounge area and sat down and proceeded to talk to me about the board of trustee job. Lt. Brown continued to talk for about 20 to 25 minutes about the trustee job. What grabbed my attention is when he said that the board can loose all of the 370 million dollars and we will not have a retirement. I told Lt. Brown no one on the board of trustee has the power to loose 370 million dollars because the city got to have a reserve of money. For instance, if every employee of the city quits, the city got to have enough money to give the employee their money out of retirement. So, that is why I don't believe you. Lt. Brown and I discussed more problems about the retirement system. At 0105 I woke up FIF Lewis for his night watch. FIF Lewis came up to the lounge area and sat down. Lt. Brown then started to talk about the drop program. He stated that he was tired of Scott Curtis coming around the station telling lies about the drop program. Lt. Brown said the drop program came from the retirement system not from deferred comp. Lt. Brown stated some of the benefits as being: If you got 21 years you still have to do 3 more years to benefit you; you do get interest on the money for the first 3 years after 20 years; you will still get 1 percent from every year you service after 20 years. I then said that it sounded too good to be true. Lt. Brown got upset because I didn't believe him. He started to talk very loud. His voice was so loud that it woke up FIF Corkren. FIF Corkren came to the lounge and asked Lt. Brown to lower his voice and he then returned to bed (time was around 0120). Lt. Brown then started to talk about how he made rank. He stated that there was no evaluation, he made it on his own and that he didn't owe anyone. FIF Lewis smiled and said that he remembers Chief Grier coming by the station and pulling you outside to talk to you. A couple of shifts later you made sergeant, four months later you made lieutenant. FIF Lewis said and that is the truth. Lt. Brown got very upset and starting to pounding on the countertop like a mad man and talking so loud that he woke up FIF Corkren for the second time. FIF Corkren walked into the lounge and asked Lt. Brown to tone down his voice for the second time. Lt. Brown being in the angry state that he was in said to FIF Corkren get your ass back in the back. I told FIF Corkren go and lie down and everything will be o.k. FIF Corkren returned to bed and I waited until Lt. Brown went into his room to get some paper work to prove his point. That was my chance to get in the bed while he was in his room. So, I went to bed. Lt. Brown broke the following rules:

ARTICLE XI  SEC 1101  (N)  (P)              SEC 1102  (h)

Respectfully,

*L. M. Hartwell*

L. M. Hartwell, Sergeant
District II Station 16

TO:      C. E. Walker, Assistant Chief

FROM:  L. M. Hartwell, Sergeant

DATE:  August 14, 2004

RE:      Incident at 8206 Marsh Point Drive

On August 6, 2004 Engine 16 got dispatched to 8206 Marsh Point Drive. On arrived we found a jeep (trunk) smoldering with no visible flames. Lt. C. Brown jumped out of the apparatus and walked over to the jeep. Meanwhile, FIF Corkren and FIF Lewis were waiting for Lt. C. Brown to give his order on which line, dry chemical, or water extinguisher. Lt. C. Brown selected the 1 ¾ jump line. FIF Corkren and FIF Lewis laid the 1 ¾ jump line and put water on the jeep within 20 seconds. We returned to the station. Around 1800 and got 10-8 by radio to exercise. While we were walking around the station exercising, Lt. C. Brown talked to FIF Lewis and FIF Corkren about hustling on the vehicle fire at Marsh Point Drive. Both firefighters replied that they were waiting on Lt. Brown to give his order. Lt. Brown said O.K. and we finished exercising. Firefighters are aware of Lt. Brown reputation, which precedes him where ever he goes. Firemen are aware of the fact that if you make a decision without Lt. C. Brown telling you, he will chew you out on the spot. So, being aware of Lt. C. Brown reputation, FIF Lewis and FIF Corkren waited on Lt. Brown to give his order. Having a reputation can sometime determine how people react with you and how they handle themselves with you. A reputation can sometime hurt your command just as well as it can help your command. Which way it goes depends on how men perceive your authority.

Respectfully,

L. M. Hartwell, Sergeant
District II Station 16

TO:     C. E. Walker, Assistant Chief

FROM: L. M. Hartwell, Sergeant

DATE: August 14, 2004

RE:     Usage of Cellular Phone and Beeper

I have been at this station for over 2 years. Since I have been at this station Lt. E. F. Gamble has been using his cellular phone and beeper for his off time job. I have talked to Lt. Gamble about bringing his cell phone and beeper into the fire station for his personal use. I informed Lt. Gamble several times that he is breaking a rule in the rule and regulation book. I also stated to Lt.Gamble that a cell phone can be used as an audio recording device. Lt. Gamble even takes the cell phone on the apparatus and a couple of times he has even answered the phone why I am driving the fire apparatus. He even conducts his storage building company business on his cell phone at work. I talked to Capt. Sexton about Lt. Gamble cell phone and beeper usage while on duty. Capt. Sexton said that he would handle the problem. At roll call Capt. Sexton said he didn't want anyone to carry a cell phone or beeper at the station. Lt. Gamble said Capt. I think every officer should run his shift the way the officer wants to run that shift. Lt. Gamble said that as long as my men carry their cell phone or beeper in their pocket or stores it in the locker; I don't have a problem with it. Capt. Sexton looked at Lt. Gamble and started to read the journal. I was stunned at the fact that a Captain can tell you something and you out right say I am still going to do it my way (that is what Lt. Gamble response pretty much indirectly said that morning). I have worked on Lt. Gamble shift several times for overtime pay and saw Lt. Gamble men walk around the station using their cell phone. I have even saw Lt. Gamble lay down on Saturday and give his men permission to lay down on Saturday before 1800. On August 9, 2004, I talked to Capt. Dennis about the cell phone problem with Lt. Gamble because my men said it was not fair for me to force the rule on my shift when Lt. Gamble and his shift don't obey the rule. On August 12, 2004, I was looking through the journal and noticed that there was nothing noted in the journal about the cell phone and beeper problem. Part of my job is to enforce the rule, but how can I fairly enforce rules in the department if officers are breaking the rules with no regard for their duty to enforce them either. I hope by writing to administration this problem can be solved. Lt. Gamble broke the following rules:

ARTICLE X SEC 918                    ARTICLE XI   SEC 1103 (M)   (P)


Respectfully,

*[signature]*

L. M. Hartwell, Sergeant
District II Station 16

MEMORANDUM

TO:        FILE

FROM:     Assistant Chief C.E.Walker

DATE:     September 28, 2004

RE:        Sergeant L.M.Hartwell
           Engine Company 16

I had Sergeant Hartwell from Engine Company Sixteen brought to my office by District Chief K.Gordon on this date to discuss the letters he wrote charging Lieutenants C.Brown and Gamble of rule violations(See attachments letters). Present during the meeting were District Chief Gordon, Sergeant Hartwell, and myself. It appears that Lt. Gamble and Lt. Brown both has had some disputes with Sergeant Hartwell at different times in the past month. The disagreements have caused some problems that I must address with Sergeant Hartwell. Items of discussion with Sergeant Hartwell involves the use of personal cell phones on duty at Station Sixteen, visitors at the Station, and a heated debate on the City's proposed Drop Plan. All these items of concerns were discussed with Hartwell and are also contained in letter documentation in this file titled "Sergeant Hartwell Engine Company Sixteen". Sergeant Hartwell contends that he did nothing wrong to cause any dispute or disagreement between he and Lieutenant Gamble or Lieutenant Brown.

In a letter dated September 26, Lieutenant Gamble stated that Sergeant Hartwell told him that writing the charges against him and Lieutenant Brown was a mistake and he (Hartwell) apologizes and that he would write a letter of apology as well to the department's administration. Sergeant Hartwell when asked by me if this statement was correct, stated that he never said anything of the sort nor did he even insinuate that he was apologetic for what he wrote, the actions he took nor did he ever state that he would write a letter of apology to anyone. In fact according to Sergeant Hartwell he said that he still maintains that he was right in forwarding the charges against the two Officers and he still at this writing feels he owes no apology for doing the right thing, that is to say addressing rule violations by members of the department when they are broken.

Sergeant Hartwell when asked about visitors at the Station (sixteen) after hours categorically denied all claims of such inappropriate behaviors and or rule violations. I questioned Hartwell about why he as a Sergeant in the department felt that he should write a letter of charges against his Company officer and he stated that other firefighters in the Company eluded to the fact that if Lieutenant Gamble can use his cell phone at work, then they felt like it was only fair they be allowed to do so as well. When that

response was given to Sergeant Hartwell from Firefighter Corkren about his cell phone use he then (Hartwell) stated that he felt that he must document it and charge the Officer for the rule violation for using the phone while on duty and at other times while riding in the cab of the apparatus.

Sergeant Hartwell charges against Lieutenant Brown stemmed from an argument between the two of them concerning implementation issues of the City's proposed Drop Plan being developed by the Pension Board Committee. After talking with Hartwell about this issue it appears as though a shouting match ensued between Lieutenant Brown and Sergeant Hartwell and he felt that Lieutenant Brown was out of line as an Officer to give out wrong information as he stated it, and was rude for arousing other firefighters in the process while they slept in the dormitory.

I ended the session with Hartwell by saying that it is the Company Officer's responsibility to supervise the men under his control and that his (Hartwell) role was that of a subordinate and his responsibility was to his Officer however, if he felt that rules were being broken by his Company Officer or any Company Officer in the department he should approach the Officer and discuss the situation, bring the violation to the attention of the Officer and if the violation continues request to see the District Supervisor on the matter following the proper chain of command and refrain from taking matters into his hands. I also advised Sergeant Hartwell of the proper written chain-of-command procedures, and further warned him of addressing any letters to me in the future without first gaining permission to do so. Sergeant Hartwell's final summation to all of the matters discussed was that he would come to work, do his job, and not try to handle anything that is not a part of job and or responsibilities. He further stated that he wanted to put all of this behind him and move on, and in two years make his retirement. The conversation ended at 1650 hours and District Chief Gordon and Sergeant Hartwell returned to Station Sixteen.

*CMW 9/29/04*

TO:       K.D. Gordon, District Fire Chief *7(n c.*

FROM:     J.L. Petrey, District Fire Chief

DATE:     August 17, 2005

RE:       D.W. Wallace, Captain

Sir,

On Friday, August 12, 2005, Captain D.W. Wallace presented me with a letter from Sergeant L.M. Hartwell inquiring about his company file. This letter was addressed directly to me. On Monday, August 18, 2005, I gave Captain Wallace a written response to Sergeant Hartwells inquiry and also advised Captain Wallace that any future written communications from Sergeant Hartwell should be addressed to his company officer.

Respectfully,

J.L. Petrey, District Fire chief
District II, Station Thirteen

TO:     K.D. Gordon, District Chief *7 1 P 6*

FROM:  L.M. Hartwell, Sergeant

DATE:  August 07, 2005

RE:     Overtime Incident

Sir:

On August 4, 2005 at 0745 Capt. Burkett walked out of C-32 office and asked me if I wanted to work overtime. I replied no. So, Capt. Burkett went back into the office. I then went into the officer's dorm where Lt. Stephen was changing into this uniform. Lt. Stephen asked me to work. I replied no because I was not feeling very well. Lt. Stephen said to me come on Sgt work so you can fellowship. I replied o.k. So, I went into C-32 office and informed Capt. Burkett that I was volunteering to work overtime. Capt, Burkett replied o.k. I then proceeded to the kitchen table and had roll call. After roll call Capt. Burkett called me back into C-32 office and informed me that I was going to T-45 for overtime, but I didn't have to report to T-45 until they returned back from drill. But in the meantime to stay in E-13 until FIF Coker return back from the city doctor. I replied yes sir and went into the kitchen area and started the morning clean up. At around 0845 Lt. Stephen informed us that E-14 was having mechanical problem and could not attend morning drill, therefore, we would be taking their place. We arrived at the drill field at around 0930. After the first operation, I was getting up the 1-¾ hose when Lt. Adam, Sgt Savage, and FIF Baggett approached me and Lt. Adam said he heard that I was coming to T-45. I replied yes. Lt. Adam replied, Capt. William informed me this morning that we got to help E-3 change 2 ½, 3, and 5" hose. I said a couple of T-45 personnel are going home on sick leave because they are not use to work but I am. We joked around a couple of more minutes before Lt. Adams walked away. We returned to the station and loaded 2 ½ and 3" hoses back on E-13. We washed the dirty hoses and loaded them into the dryer. I then proceeded into the kitchen and cooked me two-bologna sandwich. After about 45 minutes of eating the bologna sandwich I got sick. I informed Lt. Stephen and he gave me permission to tell Capt. Burkett that I needed to go home because I was sick. He replied o.k. Capt. Burkett called in Sgt. Dudley for the remainder of the shift on overtime. Due to the fact that I was working overtime, sick leave does not apply because I do not build annual leave or sick leave on the days I work overtime, only on my regular shift do I build annual and sick leave and can only use sick and annual leave on my regular shift.

Respectfully,

*[signature]*

L.M. Hartwell, Sergeant
Station 13, District II

*[signature]*

TO:      C.E. Walker, Assistant Fire Chief

FROM:   L.M. Hartwell, Sergeant   *14 M S* .

DATE:    August 07, 2005

RE:      Overtime Incident

Sir:

On August 4, 2005 at 0745 Capt. Burkett walked out of C-32 office and asked me if I wanted to work overtime. I replied no. So, Capt. Burkett went back into the office. I then went into the officer's dorm where Lt. Stephen was changing into this uniform. Lt. Stephen asked me to work. I replied no because I was not feeling very well. Lt. Stephen said to me come on Sgt work so you can fellowship. I replied o.k. So, I went into C-32 office and informed Capt. Burkett that I was volunteering to work overtime. Capt, Burkett replied o.k. I then proceeded to the kitchen table and had roll call. After roll call Capt. Burkett called me back into C-32 office and informed me that I was going to T-45 for overtime, but I didn't have to report to T-45 until they returned back from drill. But in the meantime to stay in E-13 until FIF Coker return back from the city doctor. I replied yes sir and went into the kitchen area and started the morning clean up. At around 0845 Lt. Stephen informed us that E-14 was having mechanical problem and could not attend morning drill, therefore, we would be taking their place. We arrived at the drill field at around 0930. After the first operation, I was getting up the 1-¾ hose when Lt. Adam, Sgt Savage, and FIF Baggett approached me and Lt. Adam said he heard that I was coming to T-45. I replied yes. Lt. Adam replied, Capt. William informed me this morning that we got to help E-3 change 2 ½, 3, and 5" hose. I said a couple of T-45 personnel are going home on sick leave because they are not use to work but I am. We joked around a couple of more minutes before Lt. Adams walked away. We returned to the station and loaded 2 ½ and 3" hoses back on E-13. We washed the dirty hoses and loaded them into the dryer. I then proceeded into the kitchen and cooked me two-bologna sandwich. After about 45 minutes of eating the bologna sandwich I got sick. I informed Lt. Stephen and he gave me permission to tell Capt. Burkett that I needed to go home because I was sick. He replied o.k. Capt. Burkett called in Sgt. Dudley for the remainder of the shift on overtime. Due to the fact that I was working overtime, sick leave does not apply because I do not build annual leave or sick leave on the days I work overtime, only on my regular shift do I build annual and sick leave and can only use sick and annual leave on my regular shift.

Respectfully,

*L.M. Hartwell Sgt.*

L.M. Hartwell, Sergeant
Station 13, District II

TO:       K. D. Gordon, District Chief   *7SNC*

FROM:   L.M. Hartwell, Sergeant

DATE:     August 07, 2005

RE:        Overtime Incident

Sir:

I was instructed by D/C Gordon to write a letter on the incident that happen on August 04, 2005. I had a 25 minute time frame to write the letter. This will be a brief description of what happen, due to the time frame. I will submit a detail letter on August 09, 2005.

   I volunteered to work overtime on Thursday. I went to drill, and then returned to the station.

I ate some bologna and got sick, then advised Capt. Burkett that I needed to go home.


Respectfully,

L.M. Hartwell, Sergeant
Station 13, District II

TO:      K.D. Gordon, District Chief  7 {.? C.

FROM:   L.M. Hartwell, Sergeant

DATE:   August 10, 2005

RE:      Sick Leave Excuse

On August 7, 2005 at 0735 D/C Gordon called Capt. Wallace and me into the officer's dorm.
D/C Gordon stated to me that he needed a doctor excuse in reference to the day that I left work
sick and only then would the situation go away. I informed the Chief that I did not use sick
leave, therefore, I do not need to turn in a doctor excuse to you. Furthermore, I only got paid for
the hours that I worked which was 4 hours of overtime. D/C Gordon said, "you are not going to
give me a doctor excuse?" I again informed him that I could not give him a doctor excuse when I
was not on sick leave. D/C Gordon said o.k. and we walked out of the room. At around 0755,
Capt. Wallace had just started roll call when D/C Gordon asked Capt. Wallace, Lt. Stephen, and
me into the officer's dorm. D/C Gordon asked me about the doctor excuse again and I responded,
I don't need a doctor excuse when I was not on paid sick leave. Again, D/C Gordon replied o.k.
and we exited the room. At around 0805 D/C Gordon called Capt. Wallace, Lt. Stephen, and me
into his office whereas he then informed me to write a letter on the incident. I informed the
Chief that I did not have time to write a detailed letter on the incident due to appointments that I
had scheduled for that day plus my wife was already waiting for me at Wal-mart. D/C Gordon
replied to me that he could keep me until 0830 to write the letter on the incident. I then informed
D/C Gordon that he could hold me up to 0830 for manpower only (manpower is when a man is
missing from the apparatus and I have to standby until another man comes to replace the man
that is out; writing a letter is not replacing a man on the fire apparatus). D/C Gordon told me that
I had approximately 25 minutes to write him a letter on the incident. I replied yes sir. I then
wrote D/C Gordon a brief letter on the incident and advised D/C Gordon that I would turned in a
more detailed letter on Tuesday, August 9. Tuesday at roll call D/C Gordon called Capt. Wallace
and me into the officer's dorm. D/C Gordon stated that downtown did a investigation and their
finding was that I was not guilty of abusing sick leave but he was putting a 30 form on me for not
giving him a doctor excuse when he requested one. I read the 30 form and the letter behind it
and gave it back to D/C Gordon. D/C Gordon asked me was I refusing to sign the form and I
replied yes sir. D/C Gordon informed me that he would write my name on the refuse line and
give me a copy of the 30 form and the letter. I replied yes sir. D/C Gordon gave me a copy of
the form and the letter. We exited the officer's room and went back to roll call. Capt. Burkett
was in charge of C-32 the day that I left work due to illness. I got permission from the officer in
charge of district II for that day to leave and was not informed to bring a doctor excuse when I
informed him that the reason I was leaving was due to me being sick. If there was a problem
with me leaving, Capt. Burkett, the officer in charge of district II, should be counseling me and
signing the 30 form not D/C Gordon because he was not the officer in charge of district II that
day. D/C Gordon has always been biased toward me. He stated to me that if I did what he asked
me to do that this would go away. I feel as though D/C Gordon will take advantage of any

opportunity he has toward using his authority in a bias way toward me. There was the incident back in May 2003 where I turned in letters to administration stating D/C Gordon was abusing his authority in the same manner that he is doing now. Another incident took place on November 6, 2004 my first day at station 13. I observed firefighters getting calls on extension 5962 and 5965. But on November 21, I got a call on 5965 from my wife. Lt Stephen interrupted me and informed me that D/C Gordon stated that the next time I get a call on 5965, he would write me up because 5965 is the chief line. I replied that I did not know that it was the chief line and changed line. The chief line is the first line at all stations and the fact that I was seeing firefighters using these lines and I was hearing these lines being announced on the intercom for incoming phone call to firefighters and nothing was being said about these lines being for the chief. I even answered the phone and informed firefighters that they had calls on these lines and no one even said to me that I should inform the caller to call on another line because these were the chief line. But the minute that I get a call on this line, the situation was then addressed. I am bring this to your attention again that this is just biasness.

Respectfully,

L.M. Hartwell, Sergeant
District II, Station 13

MEMORANDUM

TO:      File

FROM:    Assistant Chief C.E.Walker          

DATE:    August 17, 2004

RE:      Sergeant Lee M.Hartwell

After reviewing the three (3) letters addressed directly to me from Sergeant L.M.Hartwell dated August 14th 2004, I ask the District Chiefs in District Two to look into the claims and accusations at Fire Station Sixteen (see attached letters) and report back to me their findings.

On September 2, 2004 D/C John Petrey gave me a written letter outlining the events and details of Sergeant Hartwell's claims and contained in the documentation the accusations and claims from Sergeant Hartwell were settled and concluded by all the District Chiefs in district two.

Also, it's very important to note that these claims from Sergeant Hartwell did not warrant him addressing them directly to me. He should have followed the chain of command with his complaints and accusations. He was informed by the District Chiefs (Holland and Petrey) that in the future he will use the proper chain of command. As a Sergeant in the department Hartwell already knew the proper procedures for written communications. There have been other occasions where he has violated the chain of command in similar matters. It appears that this individual is deliberately being defiant of instructions in this regard. Any future circumventing of the chain of command from this Sergeant in this regard when it is not necessary will result in actions taken in the form of a written reprimand.

PER.FORM 30
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

EMPLOYEE: L.M. Hartwell                    POSITION: Sergeant

SUPERVISOR: K.D. Gordon, Sr.                DEPT: Fire

DATE OF COUNSELING: August 18, 2005

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information, dates and times)

On August 16 Sergeant Hartwell turned in a letter charging D/C Gordon with specific allegations of being bias towards him for over 3 years. This is untrue and there is no evidence to support his allegations. Sergeant Hartwell is being charge with violating Montgomery Fire Department Rules and Regulation Section 1101 Members shall refrain from making false statements. Sergeant Hartwell has made statements against other officers and they have been found to be without merit

See attached Letters

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

_____                    8-18-05
Supervisor                                            Date

My signature indicates that the above matters were discussed with me on _____
                                                        (Month  Day  Year)
and that I received a copy of this form.

_____
Employee Signature

This will certify that        L.m. Hartwell         was offered a copy of this form
but refused to sign the Employee Counseling Record.

_____
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

TO:    K. D. Gordon, District Fire Chief 7/06.

FROM:  D. W. Wallace, Captain

DATE:  August 17, 2005

RE:    Sergeant Hartwell's Letter Date August 10, 2005

Sir:

In the letter date August 10, 2005 from Sergeant Hartwell to my self, Sgt. Hartwell stated that District Chief Gordon was being biased against him. Sgt. Hartwell referred to three different incidents in justifying this allegation. The dates of these incidents are as follows;

> Aug 7, 2005 letter referring to Sgt. Hartwell's Sick Leave excuse
> November 21, 2004 referring to Phone Lines #5962 and #5965
> May of 2003 referring to District Chief Gordon abusing his authority

On the August 7, 2005 incident, I stated in my letter that Sgt. Hartwell was presented with the opportunity, by District Chief Gordon, to produce a Sick Leave Excuse and Sgt. Hartwell refused to do so. District Chief Gordon did not show any signs of being biased against Sgt. Hartwell in trying to resolve the incident.

On November 21, 2004 incident, it was brought to my attention by Lieutenant Dean on November 23 that personnel were using the Main Phone Line (271-5962) and the District Chief's Line (271-5965) for personal use. I resolved this issue by reminding all personnel that the two lines were for business use only. I documented this in the Station Journal and both lines were highlighted in yellow on all phones. No other complaints were issued about the phone lines after this incident. At no time was I aware that any particular personnel were being singled out by any District Fire Chiefs.

As far as the incident in May 2003, Sgt. Hartwell was not in my company at the time and I was unaware of the actions taken place concerning the matter.

To this date, I have not witnessed District Chief Gordon showing biased actions toward any Personnel at Station Thirteen or any other Station, Department, or Personnel in the Fire Department.

Respectfully,

D. W. Wallace, Captain
Station Thirteen, District II

**Memorandum:**

To:           K.D. Gordon Sr., District Fire Chief  *71.0C.*

From:        P.M. Dean, Lieutenant

Date:        August 17, 2005

Re:          Sergeant Hartwell's Letter

Sir,

We have worked together for many years. We worked at Station Four together for a while, and have answered many fires and runs together while you were a Lieutenant at Station Ten and I was a Lieutenant on Truck 41. Now I have worked with you many, many shifts as my District Chief. All this time we've worked together, I've envied the job you do. We have talked about this a couple of times behind closed doors. Out of all these years, I have never seen you be bias to anyone no matter their religion, color, or race may be. You have always been pretty much by the book. You have always treated people fairly, evenly, and with respect. What you will ask of one firefighter or officer, you will ask for all. I have never seen you overuse your authority.

We had talked about an incident dealing with Sergeant Hartwell saying you were bias to him dealing with some different things. February 13,2005 through June 16, 2005 you were District Chief on "C" shift which included Myself, Sgt. Hartwell, F/F Watkins, and F/F Watson. During this time I never saw you be bias to Sgt. Hartwell. There was never any conflict or major problems during this quarter. You told me while I was on sick leave ( which I had to get a Doctors excuse for) you had put Sgt. Hartwell in charge of engine 13 and he had did a great job. The only minor problem we had that quarter was the use of the business lines 5962 and 5965 by the men for personal use. This pertained to all men and all shifts because it was put in the daily journal on November 23,2004.

Like I've said, while you've been assigned to Station 13 as District Chief, I Have never seen you be bias of any Firefighter, Sergeant, or Officer.

Sincerely,

P.M. Dean, Lieutenant
Station Thirteen, District II

TO          K.D. Gordon, District Fire Chief ⁷⁽ᴸ²⟨

FROM:       E.L. Stephens, Lieutenant

DATE:       August 16, 2005

RE:         Treatment at Station 13

Sir:

I have been assigned to Engine Company Thirteen for approximately one (1) year, and during this tenure, I personally have not observed you being preferential or bias in your treatment towards the personnel at the station.

As far as your dealing with Sergeant Hartwell, these are some of the things that I can recall:

- Your allowing of Sergeant Hartwell to serve as the acting officer when Lieutenant Dean was out on sick leave.
- Your allowing of Sergeant Hartwell to stay and work overtime at Station 13 while sending another Fire Fighter on detail.
- You brought to my attention that the firefighters were using the district line. At that time Sgt. Hartwell was on the line and I advised him that he could not use the chief's line. He would need to call them back or have the call him back on the station's personal line.

Respectfully,

*Eddie L. Stephens*

Eddie L. Stephens, Lieutenant
Station 13, District II

TO:     C.E. Walker, Assistant Fire Chief

FROM:  K.D. Gordon, District Fire Chief ⟨handwritten⟩

DATE:  August 16, 2005

RE:     Sergeant L.M. Hartwell (Sick Leave Excuse Letter)

Sir:

On August 16, 2005 several letters were turned over to you from Sergeant L.M. Hartwell. One section of his letter charges me with bias towards him and using every opportunity to capitalize on that bias. This is totally fabricated and I am charging him with the following rule violation: Montgomery Fire Department Rules and Regulations Section 1101 Members shall refrain from false statements.

Sergeant Hartwell states in his letter, "D/C Gordon has always been biased toward me". "I feel as though D/C Gordon will take advantage of any opportunity he has toward using his authority in a bias way toward me". Sergeant Hartwell has no basis for this statement. Sergeant Hartwell charges me with threatening to write him up for being on 271-5965 and letting other people use the line without question. This is totally fabricated.

The district chief is charged with completing the roster each morning. From 0700 until 0815 the district phone line is very busy with calls pertaining to the roster. On numerous occasions I answered the district phone line and it was for Sergeant Hartwell. He would get on the line and stay on it for extended times. I notified Lt. Stephens of the problem with the phone and told him to let his men know that 271-5965 was for the district chief and they were not to receive or call anyone on that line. If a call comes in on that line have the person call them back on another line.

Sergeant Hartwell does not respond well to counseling oral or written. His history has shown that when he is corrected for unacceptable behavior. He responds by breaking the chain of command and sending letters to the Assistant Chief or the Deputy Chief with charges against his officers.

When assigned to Station 2 Captain David Norman gave him an order not to wash his car on weekdays and he defiantly continued to wash the car during the week. When Captain Norman reprimanded him, he immediately sent letters downtown stating rules being broken by Captain Norman.

When assigned to Station 16 Sergeant Hartwell was made to give up his quarters across the engine room and sleep in the quarters with the other men. Sergeant Hartwell did not agree with this order. He immediately broke the chain of command and sent Chief Walker a letter stating the rules that Lt. E.F. Gamble was breaking. Chief Walker found the accusations to have no merit.

Sergeant Hartwell has a letter of reprimand in his file for refusing to make coffee when he was assigned to the Rehab van. He was told by Lt. Shaw and he just refused. This is just another example of his defiance of authority.

Sergeant Hartwell has been transferred several times in his career because of altercations between him and other men at the station. He was transferred from Station 6 for an altercation between Firefighter Brown, he was transferred from Station 2 for and altercation between him and Firefighter Coleman, Firefighter Martin was transferred from Station 16 for the same reason.

Prior to him being transferred to Station 13 I had a discussion between Chief Walker and Chief Jordan. It was agreed that every time Sergeant Hartwell did not perform his job to the standards of The Montgomery Fire Depart or he violates a rule he tries to shift the blame to his officer or the person correcting his behavior. It was agreed upon to send him to Station 13 so the District Chiefs could keep an eye on him. And if he continued his behavior we would take corrective action because as District Chiefs we are not afraid of him filing charge on us. Sergeant Hartwell has done exactly what we said he would.

It is time to stop all this nonsense coming from Sergeant Hartwell. In his letter he states over and over how I do not have the authority to require him to do his job. Example: Chief Gordon does not have the authority to tell me to bring an excuse. Captain Burkette should have counseled with me not Chief Gordon, Chief Gordon does not have the authority to hold me after 0800 hours except for man power shortage. According to his letter I have been abusing my authority. This is absolutely not true.

After carefully reading all of Sergeant Hartwell's letters and his file it is clear he has a defiant nature towards authority. It is time to take corrective actions regarding his behavior and absolute defiance of authority. If his behavior is not corrected it will have a negative effect on the department. Others will see his disregard for authority and no officer will be effective in day to day operations at the station or on the fire ground.

Sergeant Hartwell willfully defies authority figures and something must be done.

Respectfully,

K.D. Gordon, District Fire Chief
Station 13, District II

TO:      C.E. Walker, Assistant Chief

FROM:  J.L. Petrey, District Chief

DATE:  August 26, 2004

RE:      Station Sixteen

Sir:

On Monday August 9, 2004 I had Engine Sixteen, Engine Fifteen and Truck Forty Six at Station Fifteen to discuss several topics from the Staff Meeting on the previous Friday. Toward the end of this meeting several topics were being discussed when Engine Sixteen personnel started to ask questions about the drop program. I could tell by the questions and reactions that something had motivated these questions other than general curiosity. The men stated they felt as though Lieutenant C. Brown may have misled them.

On Thursday August 12, 2004 Sergeant L.M. Hartwell requested to speak with me privately. We discussed several things that Sergeant Hartwell thought needed to be addressed at Station Sixteen. The first was an instance where Lieutenant C. Brown had been working overtime at Station Sixteen and had unnecessarily disturbed personnel while they were sleeping. He also felt as though Lieutenant Brown had made an unfair judgment and misrepresented Station Sixteen firefighters by stating that they had not hustled on the scene of a vehicle fire. I told Sergeant Hartwell that I personally did not think this was much of a problem and that I thought that it could easily be resolved. He then told me that he thought that Lieutenant Gamble and the men on his shift were using cell phones in the Fire Stations and lying sown at improper times. He also told me that Captain Dennis had stopped people from using the dormitory on the west side of the Station. He stated that he felt as though Lieutenant Gamble had put Captain Dennis up to this because Lieutenant Gamble did not like him. Captain Dennis had previously told Sergeant Hartwell that he did not intend to make any changes at the Station. When Sergeant Hartwell asked Captain Dennis about this policy change he did not give him a clear answer. Sergeant Hartwell told me, "That is when I bluffed him and played the race card. I asked Captain Dennis if he was a racist even though I knew he was not". Sergeant Hartwell went on to tell me about Lieutenant Gamble's improper cell phone use in the Station and his men lying sown before proper times. At this time I told Sergeant Hartwell that if he was willing to document these things and send them through the proper Chain of Command I would investigate them.

On Wednesday August 28, 2004 I received two sets of three letters from Sergeant Hartwell. One set addressed to me and the other set to you.

The first letter concerned a vehicle fire at 8206 Marsh Point Drive. Lieutenant C. Brown was in charge of Engine Sixteen at this incident. After they returned to the Station and while exercising, Lieutenant Brown discussed with Firefighter Corkren and Firefighter Lewis about hustling on the scene. Both Firefighters replied that they were waiting on

Lieutenant Brown to give his orders. Lieutenant Brown replied OK and they finished exercising.

The second letter described a conversation between Lieutenant Brown and Sergeant Hartwell. The conversation started off about the retirement system and the DROP Program, It then proceeded to talk about how Lieutenant Brown make rank. Sergeant Hartwell's letter stated that during the conversation Lieutenant Brown became agitated and unnecessarily awakened Firefighter Corkren twice.

The third letter discussed Lieutenant Gamble's improper use of cell phones and lying down before the designated time.

After reading these three letters I shared them that morning with District Chief Smith and asked him to investigate this on his shift. The following morning I shared the letters with District Chief Gordon and asked him to investigate this on his shift.

All personnel at Station Sixteen were addressed with these possible infractions. District Chief Smith stated that after talking with C Shift the felt that there were no problems of the nature on his shift. District Chief Gordon addressed this directly with Lieutenant Gamble. Lieutenant Gamble stated that although there had been no willful or blatant violations by him or anyone on his shift there had been isolate instances that on the surface may have been interpreted by Sergeant Hartwell as being more severe than they actually were.

Respectfully,

J.L. Petrey, District Chief
Station 13, District II



**Montgomery Fire Department**
**Daily Journal**

Shift **B**　　　　　　　　　　Day **Tuesday**
Company # **Engine 13**　　　　Date: **November 23, 2004**

Subs., Vac., Holiday, S.L., A.L., P.L.

**ON DUTY**

| | |
|---|---|
| Officer | D.W. Wallace, Captain |
| Sergeant | H.P. Bozeman |
| F/F | J.T. Ayers |
| F/F | M.A. Evans |
| F/F | |
| F/F | |
| F/F | |
| F/F | |

DOT

Dist. Chief  K.D. Gordon
D/C Aide

Company School:　　Time 1000
Subject: Hose　　　　　　Hrs. 2

Subject:　　　　　　　　Hrs.

Company School:　　Time 1400
Subject: Apparatus　　　　Hrs. 1

Subject:　　　　　　　　Hrs.

## EMERGENCY RUNS

| | | |
|---|---|---|
| 1 | 4273 Troy Hwy. | 10-19 |
| 2 | 4273 Troy Hwy. | W-1 |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |

Motor Miles:　82054-57

| | | Officers |
|---|---|---|
| Lunch | 1200-1230 | 1200-1245 |
| Supper: | 1800-1830 | 1800-1845 |

Truck Inventory:

Knox Box Key

**Night Watches:**

| | | |
|---|---|---|
| 1 | Sgt. Bozeman | 2200 |
| 2 | Evans | 0100 |
| 3 | Ayers | 0400 |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |

Shift Officer:

_____　_____
Name　　　　　　　　　　Title

FORM
3/27/2003

TO:    K. D. Gordon, District Fire Chief 7196

FROM:  D. W. Wallace, Captain

DATE:  August 18, 2005

RE:    Sgt. Hartwell's Counseling Report

Sir:

As you requested, the following is a list of actions, that I witnessed, taken place on this date.

On this date, I witnessed you counseling Sgt. Hartwell in regards to following the proper chain of command and making false statements. You explained to Sgt. Hartwell that it is not proper procedure to send sealed letters to anyone outside of the station including the district chief without expressed permission from the person receiving the letter. Evan then they have to be initialed by the company officer, district chief, etc. You also explained to him that he was counseled on this subject several times in the past by District Chief J.L. Petrey and Assistant Chief Walker.

You then counseled Sgt. Hartwell on his letter, dated August 10, 2005. You advised him that the statements in the letter, referring to you as being biased, were untrue, unfounded, and that he was in violation of the rules and regulations on this matter.

During this counseling session, you asked Sgt. Hartwell why he was smiling and if he thought this were funny. Sgt. Hartwell stated that he did not think this was funny and that he was smiling at you. You also asked Sgt. Hartwell, after each session, if he wished to make any statements or had any questions and both times he stated that he did not at this time.

Respectfully,

D. W. Wallace, Captain
Station Thirteen, District II

TO:     D.W. Wallace, Captain *Dunn*

FROM: L.M. Hartwell, Sergeant

DATE:  August 17, 2005

RE:     Body Tattoo

This letter is in reference to a veteran employee of the Montgomery Fire Department, who has been employed with the city for approximately 17 years. D/C Gordon displays a tattoo on his arm that is in violation of master letter file #8-4, tattoo/brand and body piercing policy. D/C Gordon has a tattoo of the confederate flag on his arm that is proudly displayed in his short sleeve uniform. The policy states that members should not be allowed to display any tattoos, that would detract from an appropriate professional image while in uniform. How can a confederate flag displayed on his arm in public in the deep south be a professional image when you work in the state of Alabama, the birthplace of the civil rights movement. There has been heated debate for years concerning this flag displayed at public places and on public vehicles for years. People have even went so far as to hold marches to the state capital to get this flag removed because of what the flag represents. Finally, the politicians agreed with the people of the state of Alabama and removed the flag from the state capital, public buildings, and public vehicles. The City of Montgomery removed the offensive display of the confederate flag from its vehicle, fire apparatus, and also the uniforms that the fire department has to wear (D/C Gordon arm still displays the flag in the city uniform). The rules states that tattoos are a personal choice and is allowable except when they are prejudicial to the good order and discipline of the fire service, or of a nature that tends to bring discredit upon the fire department. Section A of the rule states that tattoos that are obscene and/or advocate sexual, racial, ethnic, or religious discrimination are prohibited in and out of uniform. Using uniform items to cover such tattoo is not an option. It also states that tattoos can be grandfathered in, but how can any member of the city personnel grandfather in a symbol that was so offensive to the public and due to its history and what is stands for, the City of Montgomery departed company with the racial symbol. But yet, D/C Gordon still proudly displays this symbol on his arm and he holds a post in the department that is leadership over a district. D/C Gordon actions within the fire department with personnel in the past, coupled with the confederate flag on his arm only opens up the subject of whether he is prejudice. This is a symbol that the city disassociated itself with, so why would the department let someone keep this same symbol on their body that is very visible to the public and employees. When the city removed this flag from their logo because of its offensive background, why let a employee continue to display this symbol unless you disagree with the city and think that the flag should have never been removed and what to show your support for the history of the flag and the feelings that are associated with this flag. This symbol has been used by the Klux Ku Klan, Skin Heads, and other racial hate groups to display their feelings of prejudice.

Respectfully,

*L. M. Hartwell Sgt.*

L.M. Hartwell, Sergeant
Station 13, District II

TO:      C.E. Walker, Assistant Fire Chief

FROM:  K.D. Gordon, District Fire Chief  7͡ʂ.ͻ.ͼ

DATE:   August 19, 2005

RE:      Compliance with Master Letter File #8-4 (Tattoo/Brand and Body Piercing)

Sir:

This letter is in response to a complaint from Sergeant L.M. Hartwell dated August 17, 2005 and titled, "Body Tattoo". He charged me with violating Master letter #8-4.

Sergeant Hartwell has recently received counseling for violating rules set by the Montgomery Fire Department and The Personnel Board. This is an attempt to lesson the severity of his rule violations.

In September 1999 I was assigned to the Division of Training. J.W. McKee was Fire Chief and Ronnie Howard was Deputy Fire Chief. Chief Howard notified me of a complaint made by Firefighter L.M. Hartwell and Troy Harris pertaining to the Tattoo Policy. The Policy had only been in effect for about two days. Chief Howard directed me to come to his office in order to address this complaint. I went directly to his office.

Chief Howard said he received a complaint from L.M. Hartwell and Troy Harris regarding the tattoo of a confederate flag on my right arm. He said they were offended by it and requested action be taken. Chief Howard said he was designated by Chief McKee as his representative to make a decision on the complaint. He reviewed the policy with me and asked numerous questions regarding the tattoo. In conclusion he said there was no problem and if he needed anything else he would let me know. I told him, "If you require me to have it removed, I will make the appointment today".

Nothing else has been said by anyone until now, six years later. I feel this complaint is in direct response to Sergeant Hartwell's recent written reprimand for disobeying an order.

Attached is a picture of the visible tattoo while in a short sleeve uniform. The same uniform Sergeant Hartwell states I proudly display the tattoo. This is another case of Sergeant Hartwell making false statements.

Sergeant Hartwell states in his complaint, "D/C Gordon's actions within the fire department with personnel in the past, coupled with the confederate flag on his arm only opens up the subject of whether he is prejudice. This is a blind statement and I challenge anyone to investigate this allegation and show prejudice.

I am requesting a copy of this letter along with his complaint letter be attached to the Form 30 regarding him making false statements.

I am in compliance with Master Letter File 8-4 as of September 1999 only a few days after the policy was implemented. This was ruled by Deputy Chief Howard the representative of Fire Chief McKee.

If the decision is overturned I will do what is necessary to comply with the ruling.

Respectfully,

K.D. Gordon, District Fire Chief
Station 13, District II

To:         K. D. Gordon, District Chief *[handwritten]*

From:       J. J. Addie, Assistant Chief

Date:       August 19, 2005

Memo

On this date Chief K.D. Gordon asked me to photograph his right arm while wearing his class B uniform shirt. I did as he requested and assure that no extra effort was made to alter the wearing of the uniform or lengthening of the sleeves.

During this meeting we talked about the situation he is involved in with Sergeant Hartwell. As the discussion progressed, I advised him that I understood because I wrote Hartwell up several years ago for being late during an Apparatus Operator school. As a result of the form 30 Sergeant Hartwell insinuated that my actions were because he was black. He made this statement but did not follow-up in any way.

My mentioning of this information caused Chief Gordon to ask me if I would type a memo to him about the incident. No documentation was made of the incident because Sergeant Hartwell did not attempt to force or follow-up on his comments.

Respectfully,

*[signature]*

J. J. Addie, Assistant Chief
Director of Training

**District Chief Gordon on August 19, 2005 by Chief J.J. Addie at 0417 P.M.**





TO:     All Fire Department Personnel

FROM:   Deputy Chief R. E. Howard

DATE:   September 3, 1999

Master Letter File # 8-4

RE:     Tattoo/Brand and Body Piercing Policy

This memorandum incorporates a new Montgomery Fire Department Policy on tattoos/brands and body piercing. The Montgomery Fire Department recognizes that tattoos/brands and body piercing are a matter of personal choice and is allowable except when they are prejudicial to the good order and discipline of the fire service, or of a nature that tends to bring discredit upon the Montgomery Fire Department and/or otherwise do not present an acceptable appearance as a City of Montgomery Fire Department employee. Certain tattoos, brands, and body piercing are prohibited. They are as follows:

> a.   Unauthorized: Tattoos/brands anywhere on the body that are obscene and/or advocate sexual, racial, ethnic, or religious discrimination are prohibited in and out of uniform. Tattoos/brands that are prejudicial to the good order and discipline or of a nature that tends to bring discredit upon the Montgomery Fire Department and the City of Montgomery are prohibited in and out of uniform.

> b.   Inappropriate: Tattoos/brands will not be exposed or visible above the collar bone when wearing an open collar uniform, or on the wrist of hands when wearing a Class "A" long sleeve shirt.

> c.   Body Piercing: Members are prohibited from attaching, affixing or displaying objects, articles, jewelry or ornamentation to or through the ear, nose, tongue or any exposed body part (includes visible through the uniform).

Any member obtaining unauthorized or inappropriate tattoos, brands or body piercing will be required to remove them at their own expense. Using uniform items to cover such tattoos, brands or body piercing is not an option. Members failing to remove unauthorized or inappropriate tattoos, brands or body piercing in a timely manner will be subject to discipline including, but not limited to, dismissal.

Members should not be allowed to display any tattoos, brand or body piercing that would detract from an appropriate professional image while in uniform. The Chief of the Montgomery Fire Department or his designee, will use

these guidelines in determining an appropriate fire department image and the acceptability of tattoos, brands or body piercing displayed by members in uniform. Montgomery Fire Department members with existing tattoos or brands before the implementation of this policy not meeting an acceptable Fire Department appearance and image will be required to remove the tattoos or brands if the Chief of the Fire Department or his designee deems that the circumstances are warranted. Otherwise, fire department personnel with existing tattoos or brands will be grandfathered for purposes of compliance with this rule and regulation. Any member of the Fire Department who chooses not to comply with appropriate Fire Department personnel standards is subject to disciplinary action including, but not limited to, dismissal.

PER FORM 30
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

**EMPLOYEE:** L.M. Hartwell      **POSITION:** Sergeant

**SUPERVISOR:** K.D. Gordon, Sr.      **DEPT:** Fire

**DATE OF COUNSELING:** August 9, 2005

**REASON FOR COUNSELING:** (Description of performance or conduct  - give specific facts, background information, dates and times)

On August 4, 2005 Sergeant Hartwell demanded to go home from work because he was sick. After leaving it came into question if he was sick or not. On August 7, 2005 he stated he had gone to Pri-Med when he left work on August 4, 2005. I directed him to go and get an excuse and it would resolve the question of him being sick. He refused stating, " he had been advised not to, I was not on sick leave because it was not my regular shift so I do not have to bring one". Sergeant Hartwell willfully violated Section 1103 g of the Rules and Regulation Stating: Neglect or refuse to perform any duty or refuse to obey any order of a superior officers pertaining to the department.
         SEE ATTACHED LETTER

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions.

_Kelly D. Gordon_
Supervisor          August 09, 2005
                                        Date

My signature indicates that the above matters were discussed with me on _____
and that I received a copy of this form.          (Month  Day Year)

_____
Employee Signature

This will certify that _L. M. Hartwell_ was offered a copy of this form
but refused to sign the Employee Counseling Record.

_Kelly D. Gordon_
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

To:    M.W. Green, Assistant Fire Chief

FROM: K.D.Gordon, District Fire Chief

DATE: August 7, 2005

RE:    Sergeant L.M. Hartwell

Sir:

On August 7, 2005 I was meeting with Captain D.W. Wallace and Sergeant L.M. Hartwell regarding Sergeant Hartwell leaving work before the end of the shift.  Sergeant Hartwell was asked to explain what had happened on August 4, 2005 causing him to leave work sick.

Sergeant Hartwell explained he had eaten some bologna and it made him sick at his stomach and he had to go home on sick leave.  He stated, "I even went to Pri-Med when I left work".  I told him great!  All you have to do is bring me an excuse from Pri-Med and we can resolve this whole thing.  He stated, "No, I have been advised not to bring an excuse because; I was not on sick leave it was not my regular work day".  I made sure he understood this was not a request it was a directive.  He stated a second time,    "No, I was advised not to".   I turned to Captain Wallace and asked for letters from everyone involved.

Respectfully,

K.D. Gordon, District Fire Chief
Station 13, District II

To:     K.D. Gordon, District Fire Chief

From:   D.W. Wallace, Captain 𝒟𝒲𝒞

Date:   August 7, 2005

RE:     Meeting with Sergeant. L.M. Hartwell

Sir:

On the morning of August 7, 2005, about 07:45 you had a meeting with Sergeant Hartwell and I. The meeting was about Sergeant Hartwell leaving work on August 4, 2005, due to illness. Sgt. Hartwell stated that after drill on August 4, 2005 he and Lieutenant E.L. Stephens ate some sandwich meat that made them sick, after leaving work Sergeant Hartwell stated that he went by PriMed to receive treatment. At which time you stated to Sergeant Hartwell to bring in the treatment form and this matter would be over. Sergeant Hartwell stated that he was advised not to provide a copy of his treatment form, because he was not on paid sick leave, for his time off.

You then requested for me to obtain letters on this subject from Sergeant Hartwell, Lieutenant E.L. Stephens and myself.

You then informed me that you needed the letters today, to turn in on Monday. I informed Sergeant Hartwell and Lieutenant Stephens that the letters are due in today. Sergeant Hartwell stated that he and his wife was going out of town and that he could turn the letter in his next shift (Tuesday August 9, 2005). I then told Sergeant Hartwell he would have to have District Chief Gordon's approval.

Sergeant Hartwell, Lieutenant Stephens, and I, met with you about 08:00. At which time Sergeant Hartwell stated that he and his wife were going out of town and if he could turn the letter in next shift. You stated that you needed the letters by today and that he had 30 mins. to get the letter done. Sergeant Hartwell stated that he could not do a detailed letter in 30 mins. and suggested a letter stating that he would complete a detail letter by his next shift. You told him that would be acceptable.

Respectfully,

D.W. Wallace, Captain
Station 13, District II

TO:      K. D. Gordon, District Chief *7:06*

FROM:    L.M. Hartwell, Sergeant

DATE:    August 07, 2005

RE:      Overtime Incident

Sir:

I was instructed by D/C Gordon to write a letter on the incident that happen on August 04, 2005. I had a 25 minute time frame to write the letter. This will be a brief description of what happen, due to the time frame. I will submit a detail letter on August 09, 2005.

I volunteered to work overtime on Thursday. I went to drill, and then returned to the station.

I ate some bologna and got sick, then advised Capt. Burkett that I needed to go home.

Respectfully,

L.M. Hartwell, Sergeant
Station 13, District II

TO:    M.W. Green, Assistant Fire Chief

FROM: K.D. Gordon, District Fire Chief

DATE: August 7, 2005

RE:    Sergeant L.M. Hartwell

Sir:

On August 4, 2005 Captain S.D. Burkette was assigned to District II Car 32.  District II was low on manpower.  Captain Burkette hired Sergeant Hartwell to work 24 hours.  At approximately 1200 hours Sergeant Hartwell approached Captain Burkette telling him he was going home because he was sick.  Captain Burkette acknowledged and made arrangements to cover the manpower shortage.

After Sergeant Hartwell had left the station Captain Burkette received information that led him to believe he had been deceived by Sergeant Hartwell.  Personnel from Truck 45 stated, "Sergeant Hartwell said if he was detailed to Truck  45 he would go home on sick leave".

Letters from everyone involved are attached including a Form 30 on Sgt. Hartwell.

Respectfully,

K.D. Gordon, District Fire Chief
Station 13, District II

To:        K. D. Gordon District Fire Chief *KDC*

From:      S. D. Burkett, Captain

Date:      August 07, 2005

Re:        Incident with Sergeant L. M. Hartwell

Sir,

On August 4, 2005, I was detailed to Car 32 for 24 hours. District II was seven men below minimum manpower requiring me to hire several overtime employees.

I asked Sergeant L. M. Hartwell if he would like to work overtime. Sergeant Hartwell asked where he would be needed as he was concerned about going to drill. I advised him that I would need him in Engine 13 until 1200 hours and Truck 45 for the remainder of the shift. Engine 13 had drill scheduled for the afternoon and Truck 45 had drill scheduled for that morning which would allow Sergeant Hartwell to miss drill. Sergeant Hartwell agreed to work the overtime.

At approximately 0900 hours I received a call from Lieutenant A. D. Borntrager, requesting Engine 13 to go to drill that morning as the scheduled pumper was in the shop. I agreed to this and notified Engine 13. This change required Sergeant Hartwell to go to drill.

I Returned to Station 13 at 1200 hours and was met by Sergeant Hartwell. He advised me he needed to go home sick. Sergeant Hartwell stated that he had eaten a bologna sandwich and thinks the bologna was bad. With no reason to doubt Sergeant Hartwell I agreed to let him go home.

I called Lieutenant D. M. Adams at Truck 45 to advise him that Sergeant Hartwell would not be coming. His response was that I must be kidding. Lieutenant Adams informed me that he had talked to Sergeant Hartwell that morning at drill. He stated that Sergeant Hartwell had told him he would not be coming to Truck 45 that afternoon because he was going to go home sick.

After learning of this statement, I have to question the validity of Sergeant Hartwells claim. This statement was made before Sergeant Hartwell ate the sandwich.

I feel that Sergeant Hartwell lied to me about being sick and he also broke the chain of command by coming to me instead of going to his officer.

Respectfully:

*S. D. Burkett*
S. D. Burkett, Captain
Station 6, District I

TO:      K.D. Gordon, District Fire Chief

FROM:    E.L. Stephens, Lieutenant

DATE:     August 07, 2005

RE:       Incident Pertaining To Sgt. Hartwell

Sir:

On the morning of August 04, 2005 I overheard someone asking Sgt. Hartwell was he working overtime, and he stated that he didn't feel like it. At that time I asked him to think about it, because the work schedule for that day was light. He advised me that he was feeling dehydrated." Then I stated to him that I thought you were going to work and fellowship with me today".

He later agreed to stay and work. About 0845 Lt. Borntrager called and told me to report to drill in the AM instead of PM. We went to drill, and then returned to the station. While loading the hose I noticed Sgt. Hartwell sweating profusely around his fore head. He stated that he was hot.

After the hose was loaded we took a break and began to prepare for lunch. Sgt. Hartwell and I ate bologna from the freezer. Then C-32 arrived at the station around 1200 and Capt. Burkett told me to send Sgt. Hartwell to T-45. He went to the dorm and began packing. I later went to the back and he told me that the bologna was making him sick and he needed to go home. I advised him to let Captain Burkett know.

I didn't get sick from the bologna, but it made my stomach start cramping.


Respectfully

*Eddie L Stephens*

Eddie L. Stephens, Lieutenant
Station 13, District II

To:       K.D. Gordon, District Fire Chief *7S,AS*.

From:     D.M. Adams, Lieutenant

Date:      August 04, 2005

Re:       Statement made by Sgt. Hartwell

Sir,

At roll call , Captain Burkett , stated that he was sending me Sgt. Hartwell to ride in T-45 after we get back from drill.  While loading hose at drill I asked  Sgt. Hartwell  if  he was still coming over after drill, and he stated yes. Then Sgt. Savage and myself started telling Sgt. Hartwell what all we had left to do for today, such as change hose on E-3 and inventory on HR-75. Sgt. Hartwell first stated that he would just send F/F Souphom instead of himself. Then he stated that if he had to come over to T-45,  that he would go home on sick leave. When we got back from drill, I called Captain Burkett  so that he could send me a detail man.  Captain Burkett called me back 20 minutes later and stated that Sgt. Hartwell went home on sick leave and try to find someone to come in to work.  I then stated to Captain Burkett what statements that where made by Sgt. Hartwell while we were loading hose.

Respectfully,

D.M. Adams, Lieutenant
Station Three, District II

To:  K. D. Gordon, District Fire Chief

From:  W. D. Baggett, Firefighter

Date:  August 04, 2005

Re:  Statement made be Sgt. Hartwell

Sir,

Lt. Adams and Sgt. Savage were telling Sgt. Hartwell about the work we had to do this afternoon. The afternoon work was Heavy Rescue inventory, hose change on Engine-3 and cutting the grass. At first Sgt. Hartwell said he was going to send F/F Souphom. I told Sgt. Hartwell ok, send Souphom. He then said he would go home on sick leave if he was sent to Truck-45. All of this was said while loading hose during initial attack drill.

Respectfully,

W. D. Baggett, Firefighter
Station #3, District II

To:        K.D. Gordon, District Fire Chief *7 5 0 C*

From:      W. G. Savage, Sergeant

Date:      August 04, 2005

Re:        Statement made by Sgt. Hartwell

Sir,

While loading hose on Engine 13 after the first initial attack operation on Parallell St.,  Sgt. Hartwell was told by Lt. Adams he was probably coming to ride Truck 45 after the morning drill. Lt. Adams and myself were telling Sgt. Hartwell how much work had to be done this afternoon. The duties entailed mowing the grass, changing hose on Engine-3 and assisting Lt. Champion in completing the Heavy Rescue inventory. After telling Sgt. Hartwell of the duties for the day he first said he would send F/F Souphom in his place but then said he would go home on sick leave if he was sent to Truck-45.

Respectfully,

*W G Savage*

W. G. Savage, Sergeant
Station Three, District II

To:         K. D. Gordon, District Fire Chief  *750C*

From:       S. D. Quates, Sergeant

Date:       August 07, 2005

Re:         L.M. Hartwell, Sergeant

Sir,

While attending Initial Attack Drill on August 04 I came in on the end of a conversation between Sgt. Savage and Sgt. Hartwell. Sgt. Hartwell stated that he would let Sgt. Savage fill out his O/T sheet for him, Sgt. Savage stated that if he wanted to get paid for his O/T he would fill it out himself. This was the only thing I heard them say to each other.

After returning from Drill while reloading the hose on E-13 Sgt. Hartwell stated that he was tired form the Drill. Sgt. Hartwell also stated that Sgt. Savage and F/F Baggett said at Drill that Sta. 3 had a lot of work to do that day. Sgt. Hartwell stated that he told them he wasn't afraid of work.

I did not speak with Sgt. Hartwell anymore after we finished the hose. I was not aware that Sgt. Hartwell was going on detail to T-45 at anytime during the day until I was told later that F/F C. Wilson was coming to E-13 and Sgt. Hartwell was going to T-45. A few minutes later Capt. Burkett stated at the kitchen table that Sgt. Hartwell was going home on sick leave. I had no further contact with Sgt. Hartwell about the situation.

Respectfully,

*S. D. Quates, Sgt*

S. D. Quates, Sergeant
Station Thirteen, District II

To:          K.D. Gordon District Fire Chief  *7 S/A C.*

From:        Sisay Souphom Firefighter

Date:        August 07, 2005

Re:          L.M. Hartwell Sergeant

Sir,

While I was at drill on August 4, 2005. As I was walking to the back of the truck to help load the hose, I over heard Sergeant Savage say "we have a lot of work to do at the station". Then Sergeant Hartwell said "work don't bother me". Later Sergeant Hartwell said he was worn out from the drill. After a while I heard Sergeant Hartwell asking permission to go home because he don't feel good.


Respectfully,

S. Souphom, Firefighter
Station 13, District II

TO:    C.E. Walker, Assistant Fire Chief

FROM:  K.D. Gordon, District Fire Chief

DATE:  July 9, 2005

RE:    Firefighter D.K. Coker

Sir:

On the morning of July 9, 2005 all three districts were short on manpower and having to hire overtime personnel. I called Captain Wynn at 0700 hours to ask for volunteers and to let them know if there are no volunteers someone will have to stay.

At approximately 0745 hours I called to speak with Lt. Henderson who was coming on duty. I advised Lt. Henderson of the situation with manpower and asked him who the designated overtime man was for today. He stated, "Coker". I told him to let Coker know he would have to stay and work overtime for 10 hours from 0800-1800. Firefighter Coker was told he would have to stay. I heard Lt. Henderson tell him and I heard his reply. He stated, "If I have to stay I am not going to do anything". I directed Lt. Henderson to have a counseling session with that man and let him know he would be required to perform his duties the same as anyone else on duty. Lt. Henderson stated, "I will take care of it Chief". I talked to Captain Petrey from E-15 to make him aware of the situation and to let him know this attitude would not be tolerated from the men at his station.

At approximately 0755 hours Lt. Henderson called me and said he had talked to Firefighter Coker about his comments. Firefighter Coker responded by requesting to be put on sick leave due to his neck hurting. Firefighter Coker insisted on leaving and being put on sick leave.

I advised Lt. Henderson to complete a Form 30 on D.K. Coker and have him get a doctors excuse stating he could return to work on his next duty day.

Respectfully,

K.D. Gordon, District Fire Chief
District II, Station 13, Car 32

RECEIVED JUL 1 8 2005



# Baptist Medical Center East
# Emergency Department

## JRN TO WORK OR SCHOOL

E0519000087    COKER,DONALD K
DOB: 11/02/64  Age:40Y   MR #: 055734
Admit Date/Time: 07/09/05  0854A
2457 SMITH,GEORGE C

_____ has been treated at this hospital

(Name)

on _____ July 9, 2005 _____ and may return to work/school

(Date)

on _____ July 11 2005 (Monday) _____

(Date)

☑ With no limitations

RECEIVED JUL 1 8 2005

☐ With the following limitations:

_____

_____

_____

_____ S Grant RN _____     7/9/05

(Signature)                 (Date)

TO:        K.D. Gordon, District Fire Chief *7{NC,*

FROM:      E.L. Stephens, Lieutenant

DATE:      August 19, 2005

RE:        Meeting with Sgt. Hartwell

Sir:

On the morning that Chief Gordon had the meeting with Capt. Wallace, Sgt. Hartwell, and myself, he asked Sgt. Hartwell for a doctor excuse and Sgt. Hartwell stated that he was not turning it over to him. Then he told Sgt. Hartwell that he needed a letter on what happen. Sgt. Hartwell told Chief Gordon that he did not have enough time to write a letter and Chief Gordon told him he had until 0830 to give him a brief letter. After Sgt. Hartwell walked out the office, Chief Gordon told me to talk to him about bringing in an excuse. I told Chief Gordon that Sgt. Hartwell was going out of town that morning. He stated that it would be fine if Sgt. Hartwell bring it when he returns to work.

Respectfully,

Eddie L. Stephens, Lieutenant
Station 13, District II

To:            Miford Jordan, Deputy Fire Chief

From:          C. E. Walker, Assistant Fire Chief

Date:          October 4, 2005

Re:            Sgt. L. M. Hartwell
               Station Assignment/Transfer


Sir:

Sergeant L. M Hartwell is presently assigned to Fire Station #13 on Bell
Road and has been assigned to and/or transferred to the following Stations
since September 19, 1986:

September 19, 1986, Sgt. Hartwell was hired as a firefighter with the
Montgomery Fire Department and assigned to Truck Company #42.

March 31, 2000, Sgt. Hartwell was transferred from Truck Company #42 to
Engine Company #15 upon recommendation of District Fire Chief A. L.
Wright due to a dispute between Hartwell and firefighter C. D. Brown. It
was never determined by the District Chief or Company Officers of the
underlying reason for this ongoing disagreement between the two. To restore
the unity and harmony at Station # 6 as well as maintaining the safety of the
workplace, District Chief Wright recommended separation of the two
firefighters. (See attachment dated 3-23-2000)

August 4, 2000, Sgt. Hartwell was promoted to Sergeant/Engineer and
assigned to Station #2 in Engine Company #20.

January 18, 2002, Sgt. Hartwell was transferred to Station #16 and assigned
to Engine Company #16. The transfer to Engine #16 was due to an
altercation between Sgt. Hartwell and Firefighter M. L. Coleman. An
Internal Affair Investigations was conducted upon allegations that during the
argument, Sgt. Hartwell pulled a knife and threatened Coleman with it. For
safety reasons at the workplace, Sgt Hartwell was transferred. The reason

for the argument between the two was never determined. (See Deputy Chief's letter dated 5/22/2001)

November 4, 2004, Sgt. Hartwell was transferred from Engine Company #16 to Engine Company #13 on Bell Road. This transfer was recommended by Captain T. D. Stephens of Engine Company #16 due to an ongoing dispute between Sgt. Hartwell and Lt. Gamble. (See D/C John Petrey and Capt. T. D. Stephens' letters dated 9/2/04 and 10/15/04).

Sgt. Hartwell has been assigned to Engine Company #13 on Bell Road since November 4, 2004. District II Chief's Office is also located at this Station and is a primary reason why Sgt Hartwell was transferred to this Station.

CEW/

TO:    M. Jordan, Deputy Chief

FROM:   A.L. Wright, District Chief

DATE:   March 23, 2000

RE:    Firefighter L.M. Hartwell and Firefighter C.D. Brown

Sir,

After talking with Lieutenant S.D. Burkett, Captain M.H. Stoudenmier, Firefighter L.M. Hartwell and Firefighter C.D. Brown I have come to the conclusion that a personal problem exist between Firefighter Hartwell and Firefighter Brown. It would be my recommendation, at this time, that we transfer the two men to different companies and different shifts within the department. Although I believe that a transfer should be earned and not given for poor behavior I believe that we should do this in this case to prevent a problem from occurring in our department and to promote unity, peace and harmony within Station Six.

I recommend that we place a copy of the memorandum from Lieutenant Burkett, Captain Stoudenmier and Myself in Firefighter Hartwell and Brown's personnel files for future reference. If the problem persist then I recommend that some type appropriate disciplinary action be taken against both firefighters at that time.

Respectfully,

A.L. Wright, District Chief
Car 22, Station 2

TO:     A.L. Wright, District Chief

FROM:   S.D. Burkett, Lieutenant

DATE:   March 23, 2000

RE:     Firefighter's L.M. Hartwell and C.D. Brown

Sir

I noticed friction between F/F Hartwell and F/F Brown at the beginning
of the quarter. Their coworkers tell me its been going on for over a
year.   They will not speak or acknowledge each other unless they have to.
Each F/F complains that the  other has tampered his food, uniform and or
personal belongings.  None of the incidents were serious and when questioned
no one would own up to the pranks.  I counciled with both men seperately
and together and could not determine why they have this hatred toward
each other. Their fued is starting to disrupt the shift and may impair
our ability to function well on the fireground.  I advised Capt. Boling
that if they were not seperated immediately the pranks might turn into
more serious acts and that their differences are irreconcilable.

Respectfully,

S.D. Burkett, Lieutenant
District I, Truck Forty-Two

TO:     A.L. Wright, District Chief

FROM:   M.H. Stoudenmier, Captain

DATE:   March 23, 2000

RE:     F/F L.M. Hartwell and F/F C.D. Brown

Sir:

During this quarter, Lt. Burkett and I have noticed growing tension between
F/F Hartwell and F/F Brown. They will not speak, look at or acknowledge one
another. There have been several instances of one or the others food being
tampered with, turn out gear tampered with and other pranks. When it happens
to one, he blames the other. When we confront the one accused, he denies every-
thing. Other personnel on the shift always deny responsibility for these acts
also.

While we realize these pranks are childish and petty, the problem has grown to
the point that we are afraid it may lead to a physical confrontation between
the two. We have talked to them separately and together. Neither one will
say why he dislikes the other. We have asked other personnel on the shift
why these two men dislike each other and no one seems to know why. Yet every
man we talked to expressed concern that the situation is reaching a boiling
point.

Our purpose for bringing this to your attention is not to seek punishment for
either one. Our purpose is to seek help in avoiding a damaging confrontation
by separating them. The entire shift is being affected by this problem. Lt.
Burkett and I both feel this shift will function much better by separating these
two men and removing this tension on the shift. Lt. Burkett and I have brought
this situation to Captain Bolling's attention and he agrees that these two men
need to be separated.

Respectfully,

M.H. Stoudenmier

M.H. Stoudenmier, Captain
Station Six, District I

A.L.W.

TO:         Fire Chief, J.W. McKee

FROM:     Deputy Chief, M. Jordan M.J

DATE:      May 22, 2001

RE:        Internal Affairs Investigation
            Sgt. L.M. Hartwell and F/F M.L. Coleman

Sir:

Upon my orders, Chief Investigator W.D. Davis and Captain D.G. Sambor conducted an Internal Affairs Investigation as to the circumstances surrounding an altercation involving Sergeant L.M. Hartwell and Firefighter M.L. Coleman at Fire Station Number Two on April 17, 2001. According to the written documentation forwarded to this office, it was alleged by F/F Coleman that Sergeant Hartwell pulled a knife and threatened him during a heated argument that they were having. F/F Coleman stated that he felt threatened at the time of the incident and he continues to feel that violence involving Sgt. Hartwell is still a possibility.

It was obvious from the statements taken that a very heated argument did occur between Sergeant Hartwell and Firefighter M.L. Coleman. The topic of the conversation was inappropriate for them to be discussing at work and became volatile after they began to call one another names. At one point during the argument, Sergeant Hartwell pulled his knife out and pointed it at Firefighter Coleman. Hartwell claims that this was done in a joking manner but Coleman felt that it was done as a serious threat to him and his safety.

The particulars of the conversation are irrelevant. The fact remains that a conversation between two employees turned heated and almost got to a point where it turned physical. During this argument a knife was drawn and pointed at the second party of the altercation. Again, whether the knife was drawn in anger or in a joking manner is irrelevant. It should have never been produced in the first place. The fact that it was pulled out at all shows very poor judgment. Lastly, this altercation took place between a supervisor and a subordinate. Supervisors must supervise, and certainly not allow themselves to be drawn into a conversation that could turn heated. When this conversation began to turn serious, instead of stopping it, Sergeant Hartwell

contributed to it making the incident more likely for a violent outcome. His actions are unacceptable and must not happen again.

In conclusion, I feel that this situation cannot be ignored due to the fact that the two subjects work at the same station and the Administration is to be responsible and to provide a workplace free of violence. Had this incident progressed any further, I would have had no choice but to recommend very harsh disciplinary measures to both parties. However, from the facts presented in this case, I feel it adequate to counsel with both parties and stress to them that this type of behavior will not be tolerated. It should be clearly understood by both Sergeant Hartwell and Firefighter Coleman that any future incidents of this nature will result strong disciplinary measures.

To:        K.D. Gordon, District Chief *7:DC*

From:      T.D. Stephens, Captain

Date:      October 15, 2004

Re:        Personnel Change

Sir,

I have spoken with Sergeant Hartwell on three separate occasions concerning his desire to file a lawsuit against Lieutenant E.F. Gamble.

On Saturday October 09, 2004. Sergeant Hartwell called me at Fire Station 16 and requested a copy of a letter that Lieutenant Gamble wrote. I immediately explained to him that any paper work turned in downtown was the property of the Montg. Fire Department and that I could not give him that information. I then advised him to refer any request concerning that matter through the appropriate channels to the Fire Department Administrations.

On Sunday morning October 10, 2004. Sergeant Hartwell came by the station on his off duty day and spoke with me for approximately one hour. During this time he once again expressed his desire to continue with his plans to file a lawsuit. I tried to explain to him that Lieutenant Gamble did not accuse him of the wrong doings that he thought may have occurred. I also asked him what was the reason for filing this suit. He stated, "It has nothing to do with the Fire Department, in fact it is a personal matter between Lieutenant Gamble and myself".

Finally on October 15, 2004 he came by the station to pick up his paycheck. Once again he told me of his intentions. During our brief conversation he also expressed to me that he had so many personal problems with Lieutenant Gamble that he could not work with him any longer.

In conclusions, it is my opinion, that Sergeant Hartwell does not wish to let go of the past and move forward. During each conversation I have held with him, he has shown much anger and hatred towards Lieutenant Gamble. I witness Lt. Gamble attempt to make amends with him and start over with a clean slate, but Sergeant Hartwell chooses to stay with the problems in the past.

After questioning the two individuals about their personal feelings towards each other. Lieutenant Gamble said he had no problems with Sergeant Hartwell, but in exchange Sergeant Hartwell stated he did not like Lieutenant Gamble or his ways.

Taking all these actions into consideration, I strongly feel that these two individuals could very easily engage into a physical altercation. Therefore I ask that the two of them be separated.

When I mention about separating the two, Sergeant Hartwell said he did not mind transferring to another station. So I ask, that this individual be transferred.

Respectfully;

T.D. Stephens
District 2, Station 16

Per Chief McKee
O.K 11-2-04

TO:      C.E. Walker, Assistant Chief

FROM:   J.L. Petrey, District Chief

DATE:    September 2, 2004

RE:      Station Sixteen

Sir:

On Monday, August 9, 2004 I had Engine Sixteen, Engine Fifteen and Truck Forty Six at Station Fifteen to discuss several topics from the Staff Meeting on the previous Friday. Toward the end of this meeting several topics were being discussed when Engine Sixteen personnel started to ask questions about the drop program. I could tell by the questions and reactions that something had motivated these questions other than general curiosity. The men stated they felt as though Lieutenant C. Brown may have misled them.

On Thursday, August 12, 2004 Sergeant L.M. Hartwell requested to speak with me privately. We discussed several things that Sergeant Hartwell thought needed to be addressed at Station Sixteen. The first was an instance where Lieutenant C. Brown had been working overtime at Station Sixteen and had unnecessarily disturbed personnel while they were sleeping. He also felt as though Lieutenant Brown had made an unfair judgment and misrepresented Station Sixteen firefighters by stating that they had not hustled on the scene of a vehicle fire. I told Sergeant Hartwell that I personally did not think this was much of a problem and that I thought that it could easily be resolved. He then told me that he thought that Lieutenant Gamble and the men on his shift were using cell phones in the Fire Stations and lying down at improper times. He also told me that Captain Dennis had stopped people from using the dormitory on the west side of the Station. He stated that he felt as though Lieutenant Gamble had put Captain Dennis up to this because Lieutenant Gamble did not like him. Captain Dennis had previously told Sergeant Hartwell that he did not intend to make any changes at the Station. When Sergeant Hartwell asked Captain Dennis about this policy change he did not give him a clear answer. Sergeant Hartwell told me "That is when I bluffed him and played the race card. I asked Captain Dennis if he was a racist even though I knew he was not". Sergeant Hartwell went on to tell me about Lieutenant Gamble's improper cell phone use in the Station and his men lying down before proper times. At this time I told Sergeant Hartwell that if he was willing to document these things and send them through the proper Chain of Command I would investigate them.

On Wednesday, August 28, 2004 I received two sets of three letters from Sergeant Hartwell. One set addressed to me and the other set to you.

The first letter concerned a vehicle fire at 8206 Marsh Point Drive. Lieutenant C. Brown was in charge of Engine Sixteen at this incident. After they returned to the Station, and while exercising, Lieutenant Brown discussed with Firefighter Corkren and Firefighter Lewis about hustling on the scene. Both Firefighters replied that they were waiting on

Lieutenant Brown to give his orders. Lieutenant Brown replied OK and they finished exercising.

The second letter described a conversation between Lieutenant Brown and Sergeant Hartwell. The conversation started off about the retirement system and the DROP Program, it then proceeded to talk about how Lieutenant Brown made rank. Sergeant Harwell's letter stated that during the conversation Lieutenant Brown became agitated and unnecessarily awakened Firefighter Corkren twice.

The third letter discussed Lieutenant Gamble's improper use of cell phones and lying down before the designated time.

After reading these three letters I shared them that morning with District Chief Smith and asked him to investigate this on his shift. The following morning I shared the letters with District Chief Gordon and asked him to investigate this on his shift.

All personnel at Station Sixteen were addressed with these possible infractions. District Chief Smith stated that after talking with C Shift he felt that there were no problems of this nature on his shift. District Chief Gordon addressed this directly with Lieutenant Gamble. Lieutenant Gamble stated that although there had been no willful or blatant violations by him of anyone on his shift there had been isolated instances that on the surface may have been interpreted by Sergeant Hartwell as being more severe than they actually were.

Respectfully,

J.L. Petrey, District Chief
Station 13, District II

```
PREPARED: 12/16/04        CITY OF MONTGOMERY MERIT INCREASE
PROGRAM: PA585L
              FROM: 01/28/05      TO: 02/10/05        PAYABLE DATE:  2/18/05

DEPARTMENT:  64 00  FIRE DEPARTMENT
```

JAN19'05 AM 9:34 RCVD

| LAST NAME FIRST MI | SSN POSITION PAY FREQ GRADE SCH HOURS | PAY GRD STP | CURRENT HRLY-RT PAY PERIOD ANNUAL | MERIT DATE | PAY GRD STP | NEW HRLY-RT PAY PERIOD ANNUAL | MERIT DATE |
|---|---|---|---|---|---|---|---|
| HARTWELL LEE M | 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 8011 BW PSZ C | 9 | 13.1772 1,475.85 38,372.01 39,514 | 2/01/05 1519.77 | 10 | 13.5397 1,516.45 39,427.61 40,601 | 2/01/06 1561.58 |

✓THIS EMPLOYEE IS RECOMMENDED FOR A MERIT INCREASE.

__MERIT INCREASE NOT RECOMMENDED AT THIS TIME.

COMMENTS: _____

        DOCUMENTATION ATTACHED

        _____

DATE: _1/13/05_    APPROVED:   DEPARTMENT HEAD       _____

      Jan 17, 2005             APPOINTING AUTHORITY  Michael D Biddle

      1/20/05                  PERSONNEL OFFICER      Barbara M Montoya

          PAGE    288

# Montgomery Fire Department
## Annual Merit Appraisal Form

Name: L.M. Hartwell          Rank: Sergeant          Social Security #: 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

Station: Thirteen          Unit: Engine Thirteen          Date: January 01, 2005

---

### Company Officer

| Name | Rank | Signature | Date |
|---|---|---|---|
| D. W. Wallace, | Captain | *[signature]* | 1-1-05 |
| P.M. Dean, | Lieutenant | *[signature]* | 1-4-05 |
| E.L. Stephens, | Lieutenant | *[signature]* | 1-4-05 |

Raise:  Recommended ☒   Not Recommended ☐

**Explanation:**
Sergeant L.M. Hartwell does not have anything in his file that would keep him from receiving his merit raise.

---

### District Chief / Shift Commander

| Name | Rank | Signature | Date |
|---|---|---|---|
| M. K. Holland | District Chief | *[signature]* | 1-5-05 |
| J.L. Jennings | District Chief | *[signature]* | 1/12/05 |
| K. D. Gordon | District Chief | *[signature]* | 1-6-05 |

Raise:  Recommended ☒   Not Recommended ☐

**Explanation:**

---

### Assistant Chief

| Name | Signature | Date |
|---|---|---|
| C. E. Walker | *[signature]* | 01/12/05 |

Raise:  Recommended ☒   Not Recommended ☐

**Explanation:**

---

### Deputy Chief

| Name | Signature | Date |
|---|---|---|
| M. Jordan | *[signature]* | 1-12-05 |

Raise:  Recommended ☒   Not Recommended ☐

**Explanation:**

---

Form 29
Revised January 13, 2003

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: __L. M. Hartwell__                    POSITION:Sergeant _____

SUPERVISOR: __D. W. Sexton, Captain__           DEPT: _Fire_ _____

DATE OF COMMENDATION: _May 11, 2004_ _____

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant L. M. Hartwell job performance this trimester around the station and on the fire ground has been excellent. He works well with the men. Sergeant Hartwell does a excellent job when the Officer is absent. He has a neat appearance and a good attitude. His job performance has been excellent.

_____ Supervisor          _May 11, 2004_ Date

My signature indicates that the above matters were discussed with me on

and that I received a copy of this form.

_____ Employee Signature    _May 11, 2004_ (Month Day Year)

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: _____L. M. Hartwell_____          POSITION:Sergeant_____

SUPERVISOR: _____R. L. Johnson, Lieutenant_____          DEPT: Fire_____

DATE OF COMMENDATION: September 20, 2004_____

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant Hartwell job performance this trimester has been excellent, around the station and on the fire ground.  He is neat in appearance, punctual for work and does a outstanding job of supervisors his men.

_____          _____9/20/04_____
              Supervisor                                            Date

My signature indicates that the above matters were discussed with me on          _September 20 2004_
                                                                          (Month Day Year)
and that I received a copy of this form.

_____
              Employee Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: _L.M. Hartwell_          POSITION: _Sergeant_

SUPERVISOR: _E.L. Stephens, Lieutenant_          DEPT: _Fire_

DATE OF COMMENDATION: _January 02, 2005_

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant Hartwell has performed very well this tri semester.. He is a seasoned professional and his years of experience shows in his daily activities. He is efficient around the station and on emergency scenes. He knows the skills required of him and does not hesitate to take action and help others as well.

_E. L. Stephens_
Supervisor

_January 02, 2005_
Date

My signature indicates that the above matters were discussed with me on

and that I received a copy of this form.

_January 02, 2005_
(Month Day Year)

_L. M. Hartwell_
Employee Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PREPARED: 1/02/04        CITY OF MONTGOMERY MERIT INCREASE
PROGRAM: PA585L
           FROM: 01/30/04       TO: 02/12/04          PAYABLE DATE: 2/20/04

DEPARTMENT: 64 00  FIRE DEPARTMENT

| LAST NAME FIRST MI | SSN POSITION PAY FREQ GRADE SCH HOURS | PAY GRD STP | CURRENT HRLY-RT PAY PERIOD ANNUAL | MERIT DATE | PAY GRD STP | NEW HRLY-RT PAY PERIOD ANNUAL | MERIT DATE |
|---|---|---|---|---|---|---|---|
| HARTWELL LEE M | 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 8011 BW PSZ A | 8 | 12.8143 ~~1,435.20~~ 1477.92 ~~37,315.24~~ 38,426 | 2/01/04 | 9 | 13.1772 ~~1,475.85~~ 1519.77 ~~38,372.01~~ 39,514 | 2/01/05 |

_✓_THIS EMPLOYEE IS RECOMMENDED FOR A MERIT INCREASE.

__MERIT INCREASE NOT RECOMMENDED AT THIS TIME.

COMMENTS: _____

          DOCUMENTATION ATTACHED

          _____

DATE: __2/4/04__     APPROVED:  DEPARTMENT HEAD     _____

      __2/5/04__               APPOINTING AUTHORITY  _____

      __2/6/04__               PERSONNEL OFFICER     _____

          PAGE    313

# Montgomery Fire Department
## Annual Merit Appraisal Form

Name: L. M. Hartwell        Rank: Sergeant        Social Security #: 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

Station: Station 16        Unit: Engine 16        Date: January 30, 2004

---

## Company Officer

| Name | Rank | Signature | Date |
|------|------|-----------|------|
| D. W. Sexton | Capt. | *D. W. Sexton* | January 30, 2004 |
| D. S. Johnson | Lt. | *W. S. Johnson* | 01-31-04 |
| E. F. Gamble | Lt. | *E. F. Gamble* | 01-31-04 |

Raise:    Recommended ☒
          Not Recommended ☐

**Explanation:**
There's nothing in his file that will prevent him from receiving his merit raise.

---

## District Chief / Shift Commander

| Name | Rank | Signature | Date |
|------|------|-----------|------|
| K. D. Gordon | D/C | *K. D. Gordon* | 2/1/04 |
| K. Bolling | D/C | *K. Bolling* | 2-1-04 |
| M. K. Holland | D/C | *M. K. Holland* | 2-2-04 |

Raise:    Recommended ☒
          Not Recommended ☐

**Explanation:**

---

## Assistant Chief

| Name | Signature | Date |
|------|-----------|------|
| C. E. Walker | *C. Walker* | 02/03/04 |

Raise:    Recommended ☒
          Not Recommended ☐

**Explanation:**

---

## Deputy Chief

| Name | Signature | Date |
|------|-----------|------|
| M. Jordan | *M. Jordan* | 2-4-04 |

Raise:    Recommended ☒
          Not Recommended ☐

**Explanation:**

Form 29
Revised January 13, 2003

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: _L. M. Hartwell_____    POSITION: Sergeant_____

SUPERVISOR: _E. F. Gamble, Lieutenant_____    DEPT: Fire_____

DATE OF COMMENDATION: _May 17, 2003_____

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sgt. Hartwell's job performance this trimester around the Fire Station and on the Fire Ground has been

exceptional, He does a good job working with the men and filling in when the Officer is absent. Sgt. Hartwell

shows concern for this department by standing by or working overtime if there is a man power shortage.  I am

pleased with his performance this Trimester.

_E. F. Gamble, Lt_____
Supervisor

_May 17, 2003_____
Date

My signature indicates that the above matters were discussed with me on

and that I received a copy of this form.

_Lw M. Hartwell_____
Employee Signature

_5/17/03_____
(Month Day Year)

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

EMPLOYEE: L.M. Hartwell                    POSITION: Sergeant

SUPERVISOR: D.S.Johnson, Lieutenant        DEPT: Fire

DATE OF COMMENDATION:Sept, 04,2003

REASON FOR COMMENDATION: (Description of performance or conduct - give specific facts, background information, dates and times)

Sgt. Hartwell has performed above average on and off of the fire ground. He has worked well with the Men. Sgt. Hartwell has carried his load when the Officer was out.He is neat and clean I am pleased with his performance for this trimester.

_____          09- 04- 03
Supervisor                             Date

My signature indicates that the above matters were discussed with me on    09-17-03
and that I received a copy of this form.                    (Month Day Year)

_____
Employee Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER.FORM 30a
10/22/02

# EMPLOYEE COMMENDATION RECORD

**EMPLOYEE:** L. M. Hartwell       **POSITION:** Sergeant

**SUPERVISOR:** E. F. Gamble, Lieutenant       **DEPT:** Fire

**DATE OF COMMENDATION:** January 15, 2004

**REASON FOR COMMENDATION:** (Description of performance or conduct - give specific facts, background information, dates and times)

Sergeant Hartwell 's  job performance on the Fire Ground and around the Fire Station have been exceptional.

He works well with other members in his company and does a very good job taking care task  assigned to him.

I am pleased wit his overall job performance this Trimester.

_E. F. Gamble, Lt._
**Supervisor**

January 15, 2004
**Date**

_1/15/04_
**(Month Day Year)**

My signature indicates that the above matters were discussed with me on

and that I received a copy of this form.

_Lee M. Hartwell_
**Employee Signature**

ATTACH ADDITIONAL SHEETS AS REQUIRED

PREPARED: 1/16/03      CITY OF MONTGOMERY MERIT INCREASE
PROGRAM: PA585L

FROM: 01/31/03        TO: 02/13/03        PAYABLE DATE: 2/21/03

DEPARTMENT: 64 00   FIRE DEPARTMENT

| LAST NAME FIRST MI | SSN POSITION PAY FREQ GRADE SCH HOURS | PAY GRD STP | CURRENT HRLY-RT PAY PERIOD ANNUAL | MERIT DATE | PAY GRD STP | NEW HRLY-RT PAY PERIOD ANNUAL | MERIT DATE |
|---|---|---|---|---|---|---|---|
| HARTWELL LEE M | 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 8011 BW PSZ B | 7 | 12.4519 ~~1,394.61~~ 1,436.12 ~~36,259.93~~ 37,339 | 2/01/03 | 8 | 12.8143 ~~1,435.20~~ 1,477.92 ~~37,315.24~~ 38,426 | 2/01/04 |

X THIS EMPLOYEE IS RECOMMENDED FOR A MERIT INCREASE.

__ MERIT INCREASE NOT RECOMMENDED AT THIS TIME.

COMMENTS: ___Documentation of File At MFD___

_____

DATE: _2/6/03_      APPROVED:   DEPARTMENT HEAD    _J W Mc___

_2-7-03_                APPOINTING AUTHORITY   _J. Armstead___

_2/11/03_               PERSONNEL OFFICER    _Barbara M. Mc-Tay___

PAGE    380