**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**NORTHERN DIVISION**

| | |
|---|---|
| LEE HARTWELL, ) | Case No.: 2:06-CV-518 |
| ) | |
| Plaintiff, ) | **CITY OF MONTGOMERY'S AND** |
| ) | **KELLY GORDON'S SUPPLEMENTED** |
| ) | **MOTION FOR SUMMARY JUDGMENT** |
| vs. ) | |
| ) | |
| THE CITY OF MONTGOMERY and THE ) | |
| PERSONNEL BOARD FOR THE CITY AND) | |
| COUNTY OF MONTGOMERY, and KELLY ) | |
| GORDON ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

COME NOW the city of Montgomery and Kelly Gordon, by and through undersigned

counsel, and supplement their Motion for Summary Judgment and the Brief in Support of

Motion for Summary Judgment with the following argument:

**PROCEDURAL HISTORY**

This case comes to this Court by complaint, which was originally filed by Lee Hartwell

on April 27, 2006 (Exhibit A to Doc. No. 1) in the Circuit Court of Montgomery County,

Alabama, and which was served on the city of Montgomery sometime after May 10, 2006

(Exhibit A to Doc. No. 1).  The city of Montgomery removed the said action to this Court on

June 9, 2006 pursuant to 28 U.S.C. §§1441(a) and (c).  The city of Montgomery filed its Answer

on June 26, 2006 (Doc. No. 3).  After motion, the plaintiff filed an Amended Complaint, which

was allowed, on December 4, 2006 (Doc. No. 10) adding Kelly D. Gordon as a defendant in his

individual capacity and alleging (1) First Amendment retaliation violations under 42 U.S.C. §

1983, (2) Fourteenth Amendment due process and equal protection violations under 42 U.S.C.

§1983, and seeking a writ of certiorari reversing the actions of the Montgomery City County

1

Personnel Board in their upholding of the demotion of Lee Hartwell.  The Amended Complaint

invokes the Court's jurisdiction under 42 U.S.C. §1983, and 28 U.S.C. §§ 1331 and 1343.

Gordon and the city of Montgomery, then, filed an answer to the Amended Complaint on

December 22, 2006 (Answer to Amended Complaint, Doc. No. 13).

## FACTS

The complaint in this case alleges that Lee Hartwell was improperly demoted from Fire

Sergeant to Firefighter in retaliation for complaints that he made against District Chief Kelly

Gordon for his having a tattoo of a rebel flag on his arm. (Doc. No. 10) The complaint avers that

such action violated Hartwell's First Amendment guarantee of free speech; that it violated his

Fourteenth Amendment guarantees of both due process and equal protection, and that the

evidence submitted against him to the Montgomery City County Personnel Board was

insufficient to uphold the demotion that he received. (Amended Complaint, Doc. No. 10).

Lee Hartwell was demoted from Fire Sergeant to Firefighter upon the recommendation of

Assistant Fire Chief Carl Walker for:

> (1) Refusing to carry out the order of a superior
>
> (2) Violating the chain of command
>
> (3) Being disrespectful to a superior
>
> (4) Making untrue and slanderous comments about a superior

(Amended Complaint, Doc. No. 10)

On August 4, 2005, then Sergeant Hartwell was given the opportunity to work an

overtime shift as a result of an acute manpower shortage within the department on that day.

(Exhibit A, Affidavit of Kelly Gordon).  Hartwell volunteered for the assignment.  At some point

during that shift, Hartwell claimed to have become sick and went home. (Exhibit A, Affidavit of Kelly Gordon)

When his Captain for that shift, Captain Burkette, called Lieutenant D.M. Adams at another station to inform him that Hartwell would not be reporting there for duty as had been planned, Captain Burkette was given information which suggested that Hartwell had not, indeed, been sick; that he had made some statements that he simply didn't want to have to do the work that had been assigned to that company for the afternoon. (Exhibit A, Affidavit of Kelly Gordon)

**Refusing a Direct Order/Disrespect to Superior**

These occurrences were reported to District Chief Kelly Gordon, the district supervisor for that shift.  Upon inquiry by Chief Gordon, the veracity of the statement made to Captain Burkette was bolstered by the statements made by at least three firefighters. (Exhibit A, Affidavit of Kelly Gordon)  When Hartwell returned to work on August 7, 2005, Gordon questioned Hartwell about the incident and he told District Chief Gordon that he had gone to Pri-med after leaving on the 4th.  Gordon instructed Hartwell to provide a return to work slip from that doctor ensuring that he was fit for duty.  Hartwell declined the directive.  District Chief Gordon clarified the directive by telling Hartwell that it was a direct order.  Hartwell told Chief Gordon "No." (Exhibit A, Affidavit of Kelly Gordon)

On that same day, Hartwell wrote and sent a memo directly to Assistant Chief Carl Walker regarding the incident, circumventing his chain of command. (Exhibit B, Affidavit of Carl Walker)

District Chief Gordon, then, counseled Hartwell for refusing a direct order and memorialized the counseling session with a Form 30 Counseling Record on August 9, 2005. (Exhibit A, Affidavit of Kelly Gordon).  On August 17, 2005, ten days after the incident with

Chief Gordon, Hartwell delivered a copy of a memo, which was addressed to Captain Wallace to Assistant Chief Carl Walker, the head of the entire fire suppression division of the Montgomery Fire Department. (Exhibit B, Affidavit of Carl Walker).  It was delivered in a sealed envelope and openly accused District Chief Gordon of being "prejudice" and comparing him to the "Klux Ku Klan [sic], skin heads, and other racial hate groups" for his having a tattoo of a confederate flag with the word *Alabama* super-imposed over it on his upper arm. (Exhibit A, Affidavit of Kelly Gordon).  The complaint was the latest in a long line of complaints which Hartwell had made against officers immediately following some discipline or counseling. (Exhibit A, Affidavit of Kelly Gordon).  In response to the complaint, Assistant Chief Carl Walker, an Africa-American, investigated the claim and determined that "Gordon has not displayed nor is he in violation of the Montgomery Fire Department Tattoo policy." (Exhibit B, Affidavit of Carl Walker).

On August 18, 2005, Kelly Gordon counseled Hartwell for violating Rule 1101 of the Montgomery Fire Department Rules and Regulations, which prohibits a fireman from using false statements. (Exhibit A, Affidavit of Kelly Gordon)

**Prior Complaint**

Hartwell made the same complaint regarding Gordon's tattoo in 1999, whereupon the Montgomery Fire Department, by and through Chief Ronnie Howard, the then Deputy Chief investigated the allegation. (Exhibit A, Affidavit of Kelly Gordon).  While no documentary evidence of either the complaint or the investigation can be located, no discipline or counseling was ever issued against Kelly Gordon. (Exhibit A, Affidavit of Kelly Gordon).

**Chain of Command**

Firefighters are required to follow the chain of command in issuing complaints.  If the officer about whom they are complaining is the next highest ranking officer, they are permitted to bypass that particular officer. (Exhibit A, Affidavit of Kelly Gordon).  Hartwell had a long history of sending this type of communication in such a way as to bypass the chain of command. (Exhibit B, Affidavit of Carl Walker).  On August 17th, 2004, one year prior to receiving this communication, Asst. Chief Walker received a similar letter from Sgt. Hartwell. (Exhibit D, Personnel Board Transcript, 26:8-17).  On that occasion, Hartwell was informed by Chief Walker that "future circumventing of the chain of command from this sergeant in this regard when it is not necessary will result in actions taken in the form of a written reprimand."  (Exhibit B, Affidavit of Carl Walker).  Also, District Chiefs Holland and Petrey both informed Hartwell that he was not supposed to bypass his officers in communicating with the head of his division, and District Chief Gordon memorialized the counseling by filling out an Employee Appraisal Review Record and presenting it to Hartwell during his counseling session.  Hartwell refused to sign the form. (Exhibit B, Affidavit of Carl Walker)

Approximately one month after the verbal and written counselings, Hartwell again circumvented his chain of command by sending another letter directly to Asst. Chief Walker. (Exhibit D, Personnel Board Transcript, 26:12 – 28:15).  On that occasion, a Form 30B reprimand was issued to Hartwell. (Exhibit D, Personnel Board Transcript, 26:12 – 28:15).  Hartwell, therefore, not only repeatedly violated the rule, but did so knowingly after being counseled and reprimanded.

## ARGUMENT

### I. First Amendment §1983 claim

In Cook v. Gwinnett County School District, the Eleventh Circuit Court of Appeals, in addressing a public employee's right to free speech, wrote that,

> The law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 140-42, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Of course, a public employee does not have an absolute right to freedom of speech and the "State's interest as an employer in regulating the speech of its employees differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general."

Cook v. Gwinnett County School District, 414 F.3d 1313, 1318 (11th Cir., 2005) *citing* Connick v. Myers, 461 U.S. 138, 140, 103 S.Ct. 1684 (1983).

The Cook court went on to say that, in order to "strike the appropriate balance between the respective interests, we apply the four-step analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir.1989)." Cook, 414 F.3d at 1318 (11th Cir., 2005).  In order to prevail under that analysis, "an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the

adverse employment action." Cook, 414 F.3d at 1318 (11th Cir., 2005) *citing* Bryson v. City of Waycross, 888 F.2d 1562 (11th Cir.1989).

Once an employee has satisfied their burden on each of those three steps, the burden then shifts to the employer. Id.  The employer must show that it would have made the same decision even in the absence of the protected speech. Id.  The first two steps are purely questions of law. Id.; *see also* Anderson v. Burke County, Georgia, 239 F.3d 1216, 1219-1220 (11th Cir.,2001).  It is the first two prongs which are at issue in this argument.

## A.     Matter of Public Concern

"In order to state a claim for retaliation in violation of the First Amendment, an employee must show that [his] employer retaliated against [him] because of [his] speech on a matter of public concern." Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006). "A government employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006) *citing* Connick v. Myers, 461 U.S. 138, 146 (1983).  More importantly, though, in order to enjoy the protection of free speech in the public employment setting, the employee's speech must be made "primarily as a citizen on behalf of the public" rather than "as an employee upon matters of personal interest." Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000).  To determine which of these categories the subject speech falls under, "a court must examine the 'content, form, and context of a given statement.'" Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006) *citing* Connick v. Myers, 461 U.S. at 147-48.

"The mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." Morgan v. Ford, 6 F.3d 750, 754 (11th

Cir.2000).  Rather, the focus of the inquiry must be "whether the purpose of the plaintiff's speech was to raise issues of public concern or further [his] own private interest." Maggio v. Sipple, 211 F.3d at 1352 (internal quotation marks and citations omitted).  And that is the focus of this argument.

According to the amended complaint, "Sergeant Hartwell filed a complaint with the Department that a tattoo that District Chief Gordon had on his bicep was offensive and in violation of the Department's policy.  The tattoo was a Confederate Battle Flag [sic] with a human skull within the flag." (Amended Complaint, Doc. No. 10, item 4).

In fact, Sergeant Hartwell did file such a complaint.  There is no record, however, of any "filing" of such a complaint in 1999.  The only documentary record of such a complaint was made in 2005 by way of a written memo from Hartwell delivered Assistant Chief Carl Walker. The Eleventh Circuit has held that in order to determine whether the employee's speech touched a matter of public concern, the court must look to the "content, form, and context of a given statement." Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir.,2006) *citing* Connick v. Myers, 461 U.S. at 147-48, 103 S.Ct. at 1690-1691.  While Chief Gordon remembers being questioned by then Deputy Chief Howard regarding his tattoo in 1999, there exists no documentation from which the substance or context of the alleged protected speech can now be judged.

After the filing of the 2005 complaint, however, the Montgomery Fire Department, by and through Chief Walker, an African-American, investigated the claim and determined that "Gordon has not displayed nor is he in violation of the Montgomery Fire Department Tattoo policy." (Exhibit B, Affidavit of Carl Walker).

In looking to the "content, form and context of a given statement," the court should ask (1) "whether the 'main thrust' of the speech in question is essentially public in nature or private" [Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000)], (2) "whether the speech was communicated to the public at large or privately to an individual," [Kurtz v. Vickrey, 855 F.2d 723, 727-30 (11th Cir.1988)], and (3) "what the speaker's motivation in speaking was [Morris v. Crow, 117 F.3d 449, 457 (11th Cir.1997)]. Mitchell v. Hillsborough County, 468 F.3d at 1283 (11th Cir.,2006).

### (i). Whether Communication is Public in Nature

The communication was not "essentially public in nature." Maggio v. Sipple, 211 F.3d at 1352. It was a complaint made by Hartwell regarding a tattoo which he maintained was offensive to him. While the subject of the complaint may "be fairly considered as relating to any matter of political, social, or other concern to the community," that is not enough. Connick v. Myers, 461 U.S. 138, 146 (1983). The complaint must have been made "primarily as a citizen on behalf of the public" rather than "as an employee upon matters of personal interest." Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000). At no point did Hartwell invoke the interest of anybody but himself. He has never maintained that he spoke on behalf of any organization, and the speech was not made outside of working hours. Cook v. Gwinnett County School District, 414 F.3d 1313. He has failed to allege how the tattoo, about which he was complaining, would affect the public at large in any material way. In Cook v. Gwinnett County School District, the Eleventh Circuit opined that the speech in that case was public in nature because the employee was voicing concerns about the safety of children on the school buses. There is simply nothing about the subject speech which lends itself to having been made primarily as a citizen on behalf of the public. Rather, it is clear that this issue was intensely personal to Lee Hartwell. He,

himself, alleges that the tattoo was offensive. (Amended Complaint, Do. No. 10).  Put simply, he

was offended by the tattoo, and he complained about it.


> An employee's quotidian, work-a-day grievances are not
>
> constitutionally protected because "[t]o presume that all matters
>
> which transpire within a government office are of public concern
>
> would mean that virtually every remark ⋯ would plant the seed of
>
> a constitutional case. While as a matter of good judgment, public
>
> officials should be receptive to constructive criticism ⋯ the First
>
> Amendment does not require a public office to be run as a
>
> roundtable for employee complaints[.]"


Mitchell v. Hillsborough County, 468 F.3d 1276, 1283-1284 (11th Cir.2006) *citing* Connick v.

Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691 (1983).

        (ii) Whether the Speech was Communicated to Public at Large or Privately to an

individual.

        Lee Hartwell's complaint about Chief Gordon's tattoo was never made to the public.  The

1999 complaint—for which Hartwell maintains that he was retaliated against—was made to the

then Deputy Fire Chief Ronnie Howard.  (Exhibit A, Affidavit of Kelly Gordon).  The most

recent complaint, made after he was counseled by District Chief Gordon, was made in the form

of a memo addressed to his company Captain, D.W. Wallace, a copy of which was sent directly

to Assistant Chief Walker. (Exhibit B, Affidavit of Carl Walker).  There was never any

publication of such a complaint or any attempt to communicate the complaint to the public.

(iii) Motivation

The third question to be asked is what Hartwell's motivation was in making the speech. There is no indication from the complaint or otherwise that Hartwell's motivation was anything other than to redress his own grievance against Kelly Gordon.  There is nothing to suggest that this was an attempt to expose anything to the public or to protect the public from harm.

Since the "main thrust" of the speech in question was not public in nature [Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000)], and the speech was not communicated, or any attempt made to communicate it, to the public at large [Kurtz v. Vickrey, 855 F.2d 723, 727-30 (11th Cir.1988)], and there is no indication of an altruistic motive, the speech is not protected by the First Amendment, and the alleged retaliation, then, not recoverable under §1983 as a matter of law.

**B.     Employee's Free Speech Interests vs. Employer's Interest in Effective and Efficient Fulfillment of its Responsibilities**

The second step in the Cook court's balancing analysis is that the employee must show that his free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities." Cook v. Gwinnett County School District, 414 F.3d at 1318 (11th Cir., 2005).  In this case, the Montgomery Fire Department's Suppression Division is charged with working to save lives in hazardous and perilous situations where lives are directly on the line.  It is paramount to that responsibility that all employees follow the directives of their commanders without hesitation.  Refusing direct orders is a serious offense in such an organization.  Violating the chain of command by sending accusatory and inflammatory allegations directly to the division commander, and thereby bypassing the company level and district level officers, bogs down the efficient fulfillment of the division chief's responsibilities.

That chief—Assistant Chief Carl Walker—must supervise and coordinate hundreds of employees spread out over at least nineteen separate locations in the city.  He simply cannot directly handle all of the personal issues which arise among his employees on a day to day basis.

The department's interest in disciplining Lee Hartwell in order to ensure the effective and efficient running of the department and its fulfillment of its intended purpose far outweighs Lee Hartwell's right to complain about what he perceives as a racially offensive tattoo, particularly when he communicates that complaint in a manner which directly violates the department's rules and policies.

## II. Fourteenth Amendment §1983 claim – Equal Protection

Plaintiff alleges that his Equal Protection rights guaranteed by the Fourteenth Amendment have been violated.  While he fails to delineate whether this alleged violation is a disparate impact/treatment claim or a retaliation claim, the facts contain nothing which would suggest anything other than a disparate treatment or disparate impact claim.  In each case where *retaliation* is alleged in the complaint, it is alleged in conjunction with an allegation that the retaliation was for Hartwell's exercise of his *free speech* right, and not his equal protection right. (Amended Complaint, Doc. No. 10).

The Eleventh Circuit has repeatedly held that "where §1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same." Portera v. State of Ala. Dept of Finance, 322 F.Supp.2d 1285, 1294 (M.D.Ala.,2004); *see* Harris v. Shelby County Bd. of Education, 99 F.3d 1078, 1082-83 (11th Cir.1996) (noting that that Title VII and Section 1983 race discrimination claims supported by circumstantial evidence are evaluated using the framework set out ⋯ in *McDonnell Douglas* ); Richardson v. Leeds Police

Dept., 71 F.3d 801, 805 (11th Cir.1995) (in cases where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same).

The Plaintiff also fails to state upon which basis he rests his equal protection claim; he fails to allege which person or group was treated differently than him and how. We can assume from the complaint, however, that he attempts to state a claim for disparate treatment based upon his race (he does not allege the disparate impact of a facially neutral policy against him and he does allude to the fact that he is African-American).

Since there is no alleged *direct* evidence of racial discrimination, however, Hartwell must show, (1) that he was a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that he was replaced by one outside the protected class. Hawkins v. Ceco Corp, 883 F.2d 977, 982 (11th Cir.1989); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Marks v. Prattco, 607 F.2d 1153 (5th Cir.1979).

Under that fourth element, it is essential to his claim that Hartwell have some type of comparator. "In general, to establish an equal protection claim, a plaintiff must show that he is similarly situated to others who received more favorable treatment, and that his adverse treatment was based on some constitutionally protected interest such as race." Anderson v. Greene, Slip Copy, 2005 WL 3058095 (S.D.Ala.2005); *See* Jones v. Ray, 279 F.3d 944, 947 (11th Cir.2001); *see also* Henniger v. Pinellas County, 7 F.Supp.2d 1334, 1339 (M.D.Fla.1998) (finding that elements of equal protection claim include differential treatment from others similarly situated, and intentional discrimination).

Hartwell can and has produced no such comparator to support his equal protection claim. For this reason, he has failed to invoke any genuine issue of fact upon which he can obtain a

judgment under his Equal Protection §1983 claim, and the defendants herein are entitled to a judgment as a matter of law thereon.

## SUPPLEMENT
### §1983 Equal Protection

The plaintiff fails to delineate which person or group was treated differently than him and how. Since the plaintiff is an African-American male, and since he has alleged that he made a complaint regarding a tattoo of a rebel flag worn by a fellow firefighter, the only conclusion that can be drawn from the facts set forth in the Complaint is that his Equal Protection claim embraces and is somehow linked to a either a disparity based upon his race, or a retaliation for opposing an employment practice which is, or is perceived to be, illegal because of its effect on African-Americans.

In an effort to clarify the nature and basis of this Equal Protection claim, the plaintiff was asked the following in his deposition:

> Q. Let me ask you this: You are testifying that you believe Chief Gordon has a problem with you, is that right?
>
> A. Yes, sir.
>
> Q. Do you believe that Chief Gordon has a problem with you because you are black or because of who you are?
>
> A. I don't think we never did brought racial into this. I think we just said he was biased, but we never did brought race.

(Exhibit D, Deposition of Lee Hartwell, 44:1-10)

In so testifying, Hartwell has directly disavowed any Equal Protection claim based upon or embracing racial animus, and there are no other facts in the Complaint or other pleadings from which one can infer any other bases upon which an Equal Protection claim

can rest.  This Court held last year that the Equal Protection Clause requires "that all persons similarly situated should be treated alike." <u>C&J Associates Pest Control v. Hornsby</u>, Slip Copy, 2006 WL 3832819 (M.D.Ala.,2006) *citing* <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).  "Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must allege that he was similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race . . .  or some other constitutionally protected interest. <u>C&J Associates Pest Control v. Hornsby</u>, Slip Copy, 2006 WL 3832819 (M.D.Ala.,2006) *citing* <u>Jones v. Ray</u>, 279 F.3d 944, 947 (11th Cir.2001).  The plaintiff in this case has failed to allege a class of similarly-situated persons to which he belongs, if it is not African Americans.  And he has now specifically disavowed differential treatment based upon that classification.

There remains, therefore, no genuine issue of material fact as to an Equal Protection violation, and, without more, the defendants are entitled to a judgment as a matter of law.


### III. FOURTEENTH AMENDMENT §1983 CLAIM – Procedural Due Process

As an employee of the city of Montgomery, Lee Hartwell has a procedural due process right to notice and a hearing before he can be deprived of his property right in his job.  <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1984).  In <u>McKinney v. Pate</u>, the Eleventh Circuit Court of Appeals stated that,

Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.

McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir.1994). The Fourteenth Amendment guarantee of procedural due process is fulfilled where the deprivation is accompanied by notice and "some kind of hearing." Cleveland Board of Education v. Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (1984). In the present case, Hartwell was afforded notice and two pre-deprivation hearings: a trial board hearing at the departmental level, and a hearing before the Mayor. (Exhibit C, Record of Personnel Board). Additionally, Hartwell was afforded a post-deprivation hearing before the Montgomery City County Personnel Board, an independent board set up by Act 2280 of the Alabama Legislature, in part, to ensure that procedural due process is afforded to city and county employees. (Exhibit C, Record of Personnel Board). If the first two hearings were insufficient in some way, the hearing before the Personnel Board would, standing alone, meet the requirements of procedural due process because "the state may cure a procedural deprivation by providing a later procedural remedy." McKinney v. Pate, 20 F.3d at 1557 (11th Cir.1994). "To be adequate, a state post-deprivation hearing 'must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.'" Nicholson v. Moates, 135 F.Supp.2d 1185, 1189 (M.D.Ala.2001) citing Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir.2000).

The three separate hearings given to Hartwell in this case, then, clearly satisfy the requirements of procedural due process as guaranteed him under the Fourteenth Amendment, and the defendants are entitled to summary judgment on this issue as a matter of law.

## IV. QUALIFIED IMMUNITY

Kelly Gordon has been sued individually for alleged constitutional violations committed under the color of his authority as a District Chief in the Montgomery Fire Department under 42 U.S.C. §1983.  The Eleventh Circuit Court of Appeals has repeatedly recognized the doctrine of qualified immunity, a doctrine which "protects government actors performing discretionary functions from being sued in their individual capacities." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir.2003); see also Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "The doctrine shields government officials 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Holmes v. Kucynda, 321 F.3d at 1077-78 citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The test for determining whether qualified immunity applies to a government official is a two prong analysis:

To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority. Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002). If he does so, the burden then shifts to the plaintiff to show, first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly

established at the time of the violation. Hope v. Pelzer, 536 U.S.

730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); Saucier v.

Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272

(2001).

McCray v. City of Dothan, Not Reported in F.3d, 2003 WL 23518420 (11th Cir.,2003).

It is uncontested that Kelly Gordon was acting within the scope of his discretionary

authority when he counseled Lee Hartwell for refusing his order to bring a return to work slip

from the doctor and for being disrespectful to a superior.[1]  It is clearly within the discretion of a

District  Fire Chief to decide when and in what situations a subordinate should be reprimanded

and/or referred up the chain of command for further disciplinary action.

The issue, then, becomes whether a constitutional violation occurred, and if so, whether

the right violated was clearly established at the time of the violation. Holmes v. Kucynda, 321

F.3d at 1077-78.  The only punitive measure taken by Chief Gordon was to counsel Lee

Hartwell for disobeying a direct order and for making false statements against him. (Exhibit A,

Affidavit of Kelly Gordon) (Exhibit C, Record of Personnel Board).  It can hardly be said that

he has retaliated against Lee Hartwell.  He took no action which directly resulted in any adverse

employment action.  It was Assistant Chief Carl Walker who recommended a demotion for Lee

Hartwell, and that was, according to the disciplinary record, cumulative. (Exhibit B, Affidavit of

Carl Walker).  In other words, like Hartwell himself has averred in his complaint, he was

---

[1] It should be noted here that Kelly Gordon, in fact, did not make any determination or recommendation that Lee Hartwell be demoted.   It was Assistant Chief Carl Walker (who is not named as a party herein) who recommended demotion for Lee Hartwell, and the Mayor of the city of Montgomery who actually demoted the plaintiff.  Also, it should be noted that Gordon had nothing to do with the other charges: Breaking the chain of command and making untrue and slanderous comments about a superior.  Chief Walker was the instigating party for those charges.

disciplined for more than simply disobeying the order; he was disciplined for 1) "failing to carry out an order of a superior," 2) "breaking the chain of command," 3) "being disrespectful of a superior," and 4) "making untrue and slanderous comments about a superior." (Amended Complaint, Doc. No. 10, item 2). Only two of those charges originated with Chief Gordon (the first and part of the fourth), and he made no recommendation of disciplinary action. The others were brought solely by Assistant Chief Walker, the Fire Suppression Division Commander.

Therefore, the dispositive issue for qualified immunity in this case is whether Kelly Gordon "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]" when he counseled Lee Hartwell for violating his direct order to bring a return to work slip from his doctor and for making untrue statements about him. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The essence of qualified immunity is notice. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). And there is nothing beyond mere conclusory allegations to substantiate that Kelly Gordon had any such notice, or that he reasonably should have known that by mere counseling he was violating Lee Hartwell's constitutional rights, whether it be his First Amendment right to free speech or his Fourteenth Amendment rights to equal protection and due process.

Kelly Gordon, then, is entitled to qualified immunity from this lawsuit as a matter of law, and should be granted summary judgment.

## V. MUNICIPAL LIABILITY under 42 U.S.C. §1983

The United States Supreme Court in its decision in Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) held that in order to prevail against a city under 42 U.S.C.

§1983, the plaintiff must show that the city had in place a policy or custom which proximately caused the constitutional deprivation complained of. <u>Monell v. Department of Social Services of New York City</u>, 436 U.S. 658, 694, 98 S.Ct. 2018. Plaintiff has failed to allege or identify such a policy or custom which proximately caused his alleged injury.

## VI. WRIT OF CERTIORARI

Plaintiff has petitioned the court for a writ of certiorari in review of the Montgomery City County Personnel Board's finding upholding the demotion of Lee Hartwell. The Alabama Court of Civil Appeals has ruled that in reviewing such a petition, "the trial court is limited in its review to the evidence and the questions of law *presented to the Board* and must, therefore, sustain the judgment of the Board if there is *substantial evidence* to support its finding." <u>Henderson v. Montgomery City-County Personnel Board</u>, 695 So.2d 9, 9-10 (Ala.Civ.App.1996) *emphasis added*; <u>Board of Water & Sewer Commissioners v. Smith</u>, 591 So.2d 521 (Ala.Civ.App.1991).

There is no right to a *de novo* hearing under this theory. "The . . . court examines only the external validity of the proceedings to see if the board's findings are supported by substantial evidence." <u>Johnson v. Mobile County Personnel Board</u>, 459 So.2d 923, 926-27 (Ala.Civ.App.1984). If this court finds, from its review of the record, that there was substantial evidence to support the Board's finding, it must deny the writ. There is no jurisdiction under this common law writ for the Court to determine whether the board was right or wrong in its decision on the issues, it can merely determine whether or not the board had evidence to support its finding.

A certified copy of the record before the said personnel board and the transcript of the

Personnel Board hearing are attached hereto as Exhibits C, volumes 1 and 2 (Record of

Personnel Board) and Exhibit D, volumes 1 and 2 (Transcript).

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

"if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, identifying those portions of the pleadings,

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp.,

477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is

no dispute of material fact, or by showing, or pointing out to, the district court that the non-

moving party has failed to present evidence in support of some elements of its case on which it

bears the ultimate burden of proof. Celotex Corp., 477 U.S. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go

beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

interrogatories, or admissions on file, designate specific facts showing there is a genuine issue

for trial." Celotex Corp., 477 U.S. at 324. To avoid summary judgment, the non-moving party

"must do more than show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Conclusory allegations

cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Yannella v. City of Dothan, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

## CONCLUSION

Lee Hartwell's First Amendment rights have not been violated because his complaint about Kelly Gordon's tattoo was not sufficiently public in its nature to invoke the First Amendment's protection. He cannot sustain a claim of equal protection because he has produced no comparator and has failed to allege that some similarly situated person or group has been treated differently. His procedural due process rights have been more than sufficiently complied with—he was given notice and a substantive hearing on three separate occasions, one at the departmental level, one at the Mayor's level, and yet another before the Montgomery City County Personnel Board.

Kelly Gordon is entitled to qualified immunity for several reasons, the most glaring of which is that he took no action which deprived Lee Hartwell of any rights; it was Assistant Chief Walker who recommended Hartwell's demotion based not only on those issues brought to his attention by Kelly Gordon, but also on violations which he himself observed and with which he, himself, charged Lee Hartwell. As a corollary, though, his actions were clearly take within the line and scope of his responsibility as District Chief and the rights that Hartwell claims have been violated were not clearly established (for the reasons enumerated above) at the time of the alleged deprivation.

The City of Montgomery is entitled to summary judgment because the plaintiff has failed to allege a policy or custom which proximately caused his injuries, and the Montgomery City County Personnel Board is entitled to have the plaintiff's petition for writ of certiorari denied because there was more than enough substantial evidence before it to support its findings.

Respectfully submitted,


/s/ Wallace D. Mills
Wallace D. Mills (MIL 090),
Attorney for the City of Montgomery


OF COUNSEL:
City of Montgomery Attorney's Office
P.O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
Fax: (334) 241-2310


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2007, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

J. Bernard Brannan, Jr., Esq.
P.O. Box 307
Montgomery, AL 36101

Robert D. Segall
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

and I hereby certify that I have also mailed by United States Postal Service the document to the above-named non-CM/ECF participants:

/s/ Wallace D. Mills
OF COUNSEL