IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| LEE HARTWELL, ) | Case No.: 2:06-CV-518 |
| ) | |
| Plaintiff, ) | **CITY OF MONTGOMERY'S AND KELLY GORDON'S TRIAL BRIEF** |
| ) | |
| vs. ) | |
| THE CITY OF MONTGOMERY and THE ) | |
| PERSONNEL BOARD FOR THE CITY AND ) | |
| COUNTY OF MONTGOMERY, and KELLY ) | |
| GORDON ) | |
| ) | |
| Defendants. ) | |

COME NOW the city of Montgomery and Kelly Gordon, by and through undersigned counsel, and submits the following brief on the issues presented for trial in this case:

**FACTS**

Lee Hartwell was demoted from Fire Sergeant to Firefighter upon the recommendation of Assistant Fire Chief Carl Walker for:

(1) Refusing to carry out the order of a superior

(2) Violating the chain of command

(3) Being disrespectful to a superior

(4) Making untrue and slanderous comments about a superior

These charges stem from an incident wherein Hartwell feigned sickness in order to get out of doing work after he had volunteered to work an additional shift. While he was not charged with feigning the sickness, he refused to provide a return to work slip from his doctor after being directly ordered to do so by his district chief. After being written up for that refusal,

1


SCANNED
LH 5\10\07

Hartwell sent a letter directly to his division commander, Assistant Fire Chief Carl Walker, complaining of having been written up by Kelly Gordon. He thereby violated the department's policy regarding chain of command, which requires that letters and grievances and other communications be sent to the firefighter's direct supervisor so that it may be determined by that officer whether the letter or grievance needs to be handled at a higher level. Obviously, a link in the chain may be bypassed if the grievance concerns the individual who occupies that particular link in the chain.

Hartwell also typed a memo concerning a tattoo that Kelly Gordon had on his upper arm which depicts a confederate battle flag. In that letter, Hartwell compares Chief Gordon to skin heads and the Ku Klux Klan. Having a long history of making retaliatory complaints against his supervisors following some disciplinary action by that supervisor, Hartwell was charged by Assistant Chief Walker of violating the chain of command, making untrue and slanderous remarks about Chief Gordon, and being disrespectful of a superior.

The write-up issued by Chief Gordon occurred prior to the most current tattoo complaint and, therefore, could not have been made in retaliation for the said complaint. A similar complaint about the tattoo is alleged to have been made, however, in 1999. While no documentation exists from which the statement may be analyzed for free speech protection, Defendants assert that the time lapse between the 1999 complaint and the 2006 demotion makes the demotion too remote from the complaint to be retaliation.

## REQUIRED ELEMENTS

In order to prevail on his 42 U.S.C. §1983 claim for First Amendment Retaliation,

> an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. _Bryson, 888 F.2d at 1565-66._ If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the

2

> evidence that it would have made the same decision even in the absence of the protected speech. *Id.*

Cook v. Gwinnett County School Dist., 414 F. 3d 1313, 1318 (11th Cir.,2005).

Only two of those elements, however, are properly submitted to the jury. "The first two steps are questions of law; the final two steps are 'questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech.'" Cook v. Gwinnett County School Dist., 414 F. 3d 1313, 1318 (11th Cir.,2005) *citing* Anderson v. Burke County, Ga., 239 F.3d 1216, 1219-20 (11th Cir.2001).

The issues for the court to determine, then, are 1) whether Hartwell's 1999 complaint about the tattoo involved a matter of public concern, and 2) whether the city of Montgomery's interest in effective fulfillment of its responsibilities outweighed Hartwell's free speech interest. Id.

### A.    Matter of Public Concern

"In order to state a claim for retaliation in violation of the First Amendment, an employee must show that [his] employer retaliated against [him] because of [his] speech on a matter of public concern." Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006). "A government employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006) *citing* Connick v. Myers, 461 U.S. 138, 146 (1983). More importantly, though, in order to enjoy the protection of free speech in the public employment setting, the employee's speech must be made "primarily as a citizen on behalf of the public" rather than "as an employee upon matters of personal interest." Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000). To determine which of these categories the subject speech falls under, "a court must examine the 'content, form, and context of a given

3

statement.'" Martin v. City of Dothan, Slip Opinion, 2006 WL 3063461 (M.D.Ala., 2006) *citing* Connick v. Myers, 461 U.S. at 147-48.

"The mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." Morgan v. Ford, 6 F.3d 750, 754 (11th Cir.,2000). Rather, the focus of the inquiry must be "whether the purpose of the plaintiff's speech was to raise issues of public concern or further [his] own private interest." Maggio v. Sipple, 211 F.3d at 1352 (internal quotation marks and citations omitted).

According to the amended complaint, "Sergeant Hartwell filed a complaint with the Department that a tattoo that District Chief Gordon had on his bicep was offensive and in violation of the Department's policy. The tattoo was a Confederate Battle Flag [sic] with a human skull within the flag." (Amended Complaint, Doc. No. 10, item 4).

In fact, Sergeant Hartwell did file such a complaint. There is no record, however, of any "filing" of such a complaint in 1999. The only documentary record of such a complaint was made in 2005 by way of a written memo from Hartwell delivered Assistant Chief Carl Walker. The Eleventh Circuit has held that in order to determine whether the employee's speech touched a matter of public concern, the court must look to the "content, form, and context of a given statement." Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir.,2006) *citing* Connick v. Myers, 461 U.S. at 147-48, 103 S.Ct. at 1690-1691. There exists no documentation from which the substance or context of the alleged protected speech can now be judged, except for the allegation made by Hartwell in his complaint and responses to pleadings filed in this case.

In looking to the "content, form and context of a given statement," the court should ask (1) "whether the 'main thrust' of the speech in question is essentially public in nature or private" [Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000)], (2) "whether the speech was

4

communicated to the public at large or privately to an individual," [Kurtz v. Vickrey, 855 F.2d 723, 727-30 (11th Cir.1988)], and (3) "what the speaker's motivation in speaking was [Morris v. Crow, 117 F.3d 449, 457 (11th Cir.1997)]. Mitchell v. Hillsborough County, 468 F.3d at 1283 (11th Cir.,2006).

### (i). Whether Communication is Public in Nature

The communication was not "essentially public in nature." Maggio v. Sipple, 211 F.3d at 1352. It was a complaint made by Hartwell regarding a tattoo which he maintained was offensive to him. While the subject of the complaint may "be fairly considered as relating to any matter of political, social, or other concern to the community," that is not enough. Connick v. Myers, 461 U.S. 138, 146 (1983). The complaint must have been made "primarily as a citizen on behalf of the public" rather than "as an employee upon matters of personal interest." Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000). At no point did Hartwell invoke the interest of anybody but himself. He has never maintained that he spoke on behalf of any organization, and the speech was not made outside of working hours. Cook v. Gwinnett County School District, 414 F.3d 1313. He has failed to allege how the tattoo, about which he was complaining, would affect the public at large in any material way. In Cook v. Gwinnett County School District, the Eleventh Circuit opined that the speech in that case was public in nature because the employee was voicing concerns about the safety of children on the school buses. There is simply nothing about the subject speech which lends itself to having been made primarily as a citizen on behalf of the public. Rather, it is clear that this issue was intensely personal to Lee Hartwell. He, himself, alleges that the tattoo was offensive. (Amended Complaint, Do. No. 10). Put simply, he was offended by the tattoo, and he complained about it.

> An employee's quotidian, work-a-day grievances are not constitutionally protected because "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark ⋯ would plant the seed of

> a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism ⋯ the First Amendment does not require a public office to be run as a roundtable for employee complaints[.]"

Mitchell v. Hillsborough County, 468 F.3d 1276, 1283-1284 (11th Cir.2006) *citing* Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691 (1983).

### (ii) Whether the Speech was Communicated to Public at Large or Privately to an individual.

Lee Hartwell's complaint about Chief Gordon's tattoo was never made to the public. The 1999 complaint—for which Hartwell maintains that he was retaliated against—was made to the then Deputy Fire Chief Ronnie Howard. (Exhibit A to Brief in Support of Motion for Summary Judgment, Affidavit of Kelly Gordon). The most recent complaint, made after he was counseled by District Chief Gordon, was made in the form of a memo addressed to his company Captain, D.W. Wallace, a copy of which was sent directly to Assistant Chief Walker. (Exhibit B to Brief in Support of Motion for Summary Judgment, Affidavit of Carl Walker). There was never any publication of such a complaint or any attempt to communicate the complaint to the public.

### (iii) Motivation

The third question to be asked is what Hartwell's motivation was in making the speech. There is no indication from the complaint or otherwise that Hartwell's motivation was anything other than to redress his own grievance against Kelly Gordon. There is nothing to suggest that this was an attempt to expose anything to the public or to protect the public from harm.

Since the "main thrust" of the speech in question was not public in nature [Maggio v. Sipple, 211 F.3d 1346, 1352 (11th Cir.2000)], and the speech was not communicated, or any attempt made to communicate it, to the public at large [Kurtz v. Vickrey, 855 F.2d 723, 727-30 (11th Cir.1988)], and there is no indication of an altruistic motive, the speech is not protected by

the First Amendment, and the alleged retaliation, then, not recoverable under §1983 as a matter of law.

### B.    Employee's Free Speech Interests vs. Employer's Interest in Effective and Efficient Fulfillment of its Responsibilities

The second step in the Cook court's balancing analysis is that the employee must show that his free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities." Cook v. Gwinnett County School District, 414 F.3d at 1318 (11th Cir., 2005). In this case, the Montgomery Fire Department's Suppression Division is charged with working to save lives in hazardous and perilous situations where lives are directly on the line. It is paramount to that responsibility that all employees follow the directives of their commanders without hesitation. Refusing direct orders is a serious offense in such an organization. Violating the chain of command by sending accusatory and inflammatory allegations directly to the division commander, and thereby bypassing the company level and district level officers, bogs down the efficient fulfillment of the division chief's responsibilities. That chief—Assistant Chief Carl Walker—must supervise and coordinate hundreds of employees spread out over at least nineteen separate locations in the city. He simply cannot directly handle all of the personal issues which arise among his employees on a day to day basis.

The department's interest in disciplining Lee Hartwell in order to ensure the effective and efficient running of the department and its fulfillment of its intended purpose far outweighs Lee Hartwell's right to complain about what he perceives as a racially offensive tattoo, particularly when he communicates that complaint in a manner which directly violates the department's rules and policies.

C.   **Substantial or Motivating Factor**

Defendant Kelly Gordon asserts that in order to find retaliation in the workplace, the plaintiff must show that the defendant has taken some action which resulted in an adverse employment action; and action which changes the terms and conditions of employment. Stavropoulos v. Firestone, 361 F.3d 610, 619 (11th Cir., 2004) (To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment.) All that Kelly Gordon did was document a counseling session for failing to obey a direct order. Since Kelly Gordon did not initiate the other three charges against Hartwell, and was not responsible for making the decision to demote Hartwell, he cannot, as a matter of law, be found to have retaliated against Hartwell.

Respectfully submitted,

/s/ Wallace D. Mills
Wallace D. Mills (MIL 090)
Attorney for the City of Montgomery

OF COUNSEL:
City of Montgomery Attorney's Office
P.O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
Fax: (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing, by causing it to be placed in the U.S. Mail, postage prepaid, on this the ___10___ day of May, 2007, properly addressed to all as follows:

> J. Bernard Brannan, Jr., Esq.
> P.O. Box 307
> Montgomery, AL 36101
>
> Robert D. Segall, Esq.
> Copeland, Franco, Screws & Gill, P.A.
> P.O. Box 347
> Montgomery, AL 36101-0347

_____
OF COUNSEL